# EXHIBIT   1

# (Submitted for
# *In Camera* Inspection Only
# - Subject to being Sealed)

EXHIBIT   2

# EDWARD D. FAGAN ESQ.

Five Penn Plaza, 23rd Floor, New York, NY 10001
Tel # (646) 378-2225, New Fax # (646) 304-6446
New Email Address: ed.fagan@global-litigation-partners.com

*Via Fax (212) 805-7920*                                   Thursday 13 December 2007
Honorable Shira A. Scheindlin USDJ
United States District Court - Southern District of New York
500 Pearl Street, Chambers, Room 1620
New York, NY 10007

Re:    *In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK);
       Blaimauer et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et
       al, 03-CV-8961 (SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811
       (SAS)(THK); Mitsumoto et al v. Robert Bosch Corp et al 07-CV-935 (SAS)(THK);
       Stadman et al v. Austrian National Tourist Office et al 07-cv-3881 (SAS)(THK); and
       Ferk et al v. Omniglow Corporation et al 07-cv-4104 (SAS)(THK)*

Honorable Judge:

After almost seven (7) years of ongoing motion practice in Your Honor's Court, I write to
request an expedited Pre-Motion Conference pursuant to Your Honor's Individual Rules III. A.
The Motions I intend to bring are Pursuant to FRCP 60 (b) (2) (3) and (6) – to vacate the Court's
Aug. 16, 2007 Opinion & Order, 28 USC §§ 144 and 455 – to have the Court disqualify itself, as
well as pursuant to Local Rule 50.4.

The purpose of the Pre-Motion Conference is for the Court to immediately vacate the Aug. 16,
2007 Order, reinstate the cases and to have all the cases and the Motions themselves immediately
reassigned for consideration by a randomly assigned Judge.

I am joined in making this application by European and Japanese Cooperating Counsel and/or
victim and survivor family representatives, including Dr. Bernd Geier, Dr. Ivo Greiter, Dr.
Toichiro Kigawa, Dr. Gerhard Podovsovnik, Dr. Ulrich Schwab and others[1].  I am also joined in
this application (and limited at present to this Motion) by Robert Hantman Esq.[2]

It is now a matter of public record that Your Honor does not believe anything Plaintiffs
themselves, or European and Japanese Cooperating Counsel, foreign Kaprun survivor and
victims family representatives and I have repeatedly told the Court about spoliation of evidence
or the importance of proffered testimony, especially the testimony of former GBK employee
Georg Schwartz and wife of deceased GBK engineer Ms. Maria Steiner who testified about
destruction, concealment, witness intimidation and efforts to prevent investigating authorities
from gaining access to evidence.   *See Court's Aug. 16, 2007 Opinion.*   Your Honor dismissed
proffered evidence of such acts related to spoliation at the July 11, 2007 Conference. *See
excerpts from the July 11, 2007 Hearing transcript.*

Your Honor refused to accept independently documented and admitted facts of spoliation and
concealment of evidence and interference with witnesses by GBK and others.  *See excerpts from*

---

[1] Additional counsel may join but given the urgency of this application, we are submitting the letter without them
and they can join later.

[2] Former Co-Counsel James Lowy Esq. is not part of this application.

## EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 2*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*   et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*   (SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*   Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*   et al 07-cv-3881 (SAS)(THK); Ferk et al v. Omniglow Corporation et al* 07-cv-4104 (SAS)(THK)
----------------------------

*Aug. 16, 2007 Opinion.*   Your Honor expressed negative opinions on the record about the merits
of Rule 60 (b) Motion against GBK and others, issues related to spoliation and/or concealment of
evidence by GBK, Omniglow and others as well as merits of pending appeals.  *See excerpts*
*from Aug. 16, 2007 Opinion.*

However hard as it may be for Your Honor to accept, and with the respect that I have for the
Court's last seven (7) years in this case, Your Honor was wrong.  The information, documents,
testimony and Affidavits that were provided to but dismissed by the Court have proven to be
accurate.  As explained in greater detail below, on Sept. 25, 2007, the German Prosecutor issued
his formal findings that confirmed spoliation and concealment of evidence by GBK, officials and
representatives of Austrian Governmental Agencies and judiciary and some experts appointed in
the Austrian Criminal investigation.  The German Prosecutors and Court findings coupled with
Kaprun victims and survivor Motions confirm that spoliation and concealment of evidence
occurred during the whole Austrian investigations and criminal process and continued until
2007.  The German Prosecutors and Court findings also included conclusions that had it not
been for these wrongdoings, concealment and spoliations of evidence, there would have been
different findings and a different results and different verdicts against GBK and others in the
Austrian Criminal Court process.  Also, the findings of the German Prosecutor and Court
confirm that, at a time when they were before this Court, GBK and others violated and/or
ignored this Courts own evidence preservations Orders from 2001 to 2003, and thereafter during
the period when Kaprun victims and survivors sought to reverse Your Honor's Orders of
dismissal of GBK and others.  *A copy of the Sept. 25, 2007 Report and translated excerpts*
*relevant to this application are being provided with the hard copy of this letter.*

Many facts upon which the Court relied in its' prior opinions concerning the merits of Plaintiffs'
claims and the truthfulness of submissions by European and Japanese Cooperating Counsel and
Plaintiffs' victims, survivors and/or their representatives, which were incorporated into the
Court's June 19, 2007 and Aug. 16, 2007 Orders have now been proven false.  Unfortunately, by
now the Court's taint and bias has been exposed after it permeated these proceedings.  Therefore,
the prudent course of action now is to grant the relief sought herein by Plaintiffs, including
vacating the prior Orders and permitting Plaintiffs to move forward on the Rule 60 (b) Motions
before a different Judge.

Out of my respect for the institution of the Court and for Your Honor, I believe that certain
future submissions on this Motion should be filed under seal, or at the very least under a
Confidentiality Order designated *"Attorneys Eyes Only"*.  Plaintiffs, my colleagues joining in
this application and I see no purpose served by making public filings of certain submissions
related to the Court's alleged bias, prejudice and taint that need to be considered in support the
reassignment of the cases to another Judge.

Examples of these types of submissions relate to Your Honor's having entertained and then
misrepresented the extent of the Court's extra-judicial contacts with non-party hostile witness

## EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 3*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al,  03-CV-8961*
*(SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*Robert Bosch Corp et al 07-CV-935 (SAS)(THK);  Stadman et al v. Austrian National Tourist Office*
*et al 07-cv-3881 (SAS)(THK); Ferk et  al v. Omniglow Corporation et al  07-cv-4104 (SAS)(THK)*
----------------------------

Johannes Stieldorf on April 25, 2007 and former Omniglow employee Richard Rosa on June 6,
2007.  *See excerpts from July 11, 2007 transcript.*   Another example relates to Your Honor's
refusal to recognize the errors committed in its rush to issue the June 19, 2007 Opinion and
Order.   Another example relates to Your Honor's refusal to *sua sponte* reverse itself despite the
uncontradicted evidence of the Dr. Greiter June 20, 2007 Declaration and Defendants failure to
respond to the Court's inquiries about the fact that there is no forum for Plaintiffs' claims in
Austria.  *See July 11, 2007 transcript excerpts.*   Still another example relates to Your Honor's
improper refusal to recognize the status of persons such as Dr. Bernd Geier, Dr. Herwig
Hasslacher, Dr. Toichiro Kigawa, Dr. Gerhard Podovsovnik and Dr. Ulrich Schwab and
improper denial or delay of certain Motions and entry of Orders based on blatant errors of fact
and law or misrepresentations.  *See July 11, 2007 Transcript excerpts and Oct. 24, 2007 Order.*
Yet another example, is Your Honor's improper refusal to recognize Retainer Agreements,
Authorizations and Affidavits that were repeatedly submitted demonstrating my authority to act
on behalf of Plaintiffs and the fact that there was never a conflict between Plaintiffs and me.  *See*
*prior Authorizations from Drs. Geier, Hasslacher, Kigawa, Podovsovnik and Schwab addressed*
*at the May 2007 Hearing.*

From April 25, 2007 to present, as European and Japanese Kaprun victims and/or survivors'
counsel and/or authorized representatives and various US counsel, myself included, sought to
point out the Court's mistakes, Your Honor retaliated in what could be construed as an effort to
protect the Court's errors from being discovered and to insure the dismissal of the cases.

On Sept. 28, 2007, the Court held a Conference with Kaprun victims and survivors supposedly
being represented by James Lowy Esq., a lawyer who the Court knew (i) had not complied with
the Court's Aug. 16, 2007 Order and (ii) had not demonstrated his authority to act (in fact he had
no authority to act).   In that Conference, Your Honor's bias and prejudice against me and the
merits of the appeals and/or Plaintiffs' claims again manifest themselves in the inappropriate
comments and willingness to let a knowingly un-retained counsel who had failed to comply with
Your Honor's orders, to proceed to take actions and make impermissible statements on behalf of
foreign Kaprun victims and survivors.  *See excerpts from Sept. 28, 2007 transcript.*

The above are but a few examples of the reasons why the foreign Kaprun victims and survivor
Plaintiffs, as represented by European and Japanese Cooperating Counsel, and foreign Kaprun
survivor and victims family representatives, Mr. Hantman (on this limited basis) and I believe
Your Honor (i) should vacate the Court's orders since June 19, 2007, (ii) permit the filing of
certain future Declarations and evidence under seal, and (iii) inform the Chief Judge that all
future proceedings in these cases, including consideration of the Rule 60 (b) Motions to be filed,
should be reassigned to another randomly assigned Judge.

Among the factors that should be considered by an impartial Judge in the upcoming Rule 60 (b)
Motions are the German Prosecutor's and Court's Official Findings issued on Sept. 25, 2007 that
GBK, officials of Republic of Austria, persons involved with the Austrian Criminal Court

## EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 4*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*    et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*    (SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*    Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*    et al 07-cv-3881 (SAS)(THK); Ferk et  al v. Omniglow Corporation et al  07-cv-4104 (SAS)(THK)*

----------------------------

process, including certain "experts" assigned to the case, who allowed or caused the destruction
of evidence that led to an improper outcome in the Austrian Criminal Trial.   Such findings are
precisely what witnesses Schwartz and Steiner, European and Japanese counsel and Kaprun
victims, survivors and/or representatives and I tried to tell Your Honor. These findings are
exactly what were explained to Your Honor in the multiple submissions related to the Rule 60 (b)
Motion against GBK and others. The un-controverted facts also show (i) why the June 19, 2007
Order in which Your Honor concluded that Austria was an adequate alternate forum and (ii) why
many of the "facts" or conclusions in the Aug. 16, 2007 Order upon which Your Honor
concluded that I should be disqualified and then sanctioned were erroneous.  *See excerpts from*
*Aug. 16th Order related to Schwartz and Steiner depositions and GBK destruction of evidence.*

These issues alone should be sufficient for Your Honor to recognize that *vacatur* of the prior
Orders and recusal is the only way to insure that all future Motions, filings and ultimately the
trial proceedings of Kaprun victims and survivors, as well as Defendants, will receive fair,
impartial and unbiased consideration based on the merits and the objective evidence.

Another important factor that will be submitted in support of the Motion is that despite the Sept.
25, 2007 Official Findings of the German Prosecutor and Court related to confirmed destruction,
spoliation and concealment of evidence by GBK and others, the Austrian Criminal Process will
not be re-opened.   No action will be taken against GBK and the others involved with the
concealment and spoliation of evidence.   In Austria, Kaprun victims and survivors have no
independent cause of action for destruction, spoliation and concealment of evidence as they have
in the US and therefore they can only pursue this cause of action in New York.    That fact raises
yet another insurmountable obstacle to Kaprun victims and survivors' ability to get a fair trial,
and impartial consideration of motions, with counsel of their choice, given the Court's history of
bias, prejudice and improper pre-judging (albeit incorrectly) of the merits of their claims and
supporting arguments since April 2007.

The Aug. 16, 2007 Order „ pre-judged" Kaprun victims and survivors Motion for
Reconsideration, confirmed its bias against their claims, their Cooperating Foreign counsel and
me.   The Court did this by stating that the actions taken on behalf of Kaprun victims and
survivors satisfied the standards for imposition of sanctions and denial of motions because the
Court wrongly concluded that *"bad faith test facts related to several insupportable bias recusal*
*motions . . . repeated motions to reargue and continually engaging in obfuscation of issues,*
*hyperbolism and groundless presumptions in addition to insinuating the court [is] biased ..*
were met.  *See excerpts from Aug. 16, 2007 Order.*  The Court's bias against me was further
demonstrated by references to  *"alimony and child support"* issues the inclusion of which I
submit was unnecessary and inappropriate.  *See excerpts from Aug. 16, 2007 Order.*  Your
Honor's inclusion in the Aug. 16, 2007 Order of language in which Your Honor was publicly
referring *"this matter to the Court's Disciplinary Committee"* was similarly unnecessary and
potentially tviolative of Local Rules about *"complaints"* to Court's Committee on Discipline and
confidentiality provisions of *Local rule 1.5 (d) (3).*

# EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 5*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*(SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*et al 07-cv-3881 (SAS)(THK); Ferk et  al v. Omniglow Corporation et al  07-cv-4104 (SAS)(THK)*

----------------------------

Your Honor 's Aug. 16, 2007 Opinion and Order to disqualify me, in a Motion that had been previously and expressly mooted, and in which Your Honor openly proclaimed that you were reporting me to the Disciplinary Committee of this Court, caused the issues between us to be more than just a lawyer with whom the Court had differences.  Your Honor became an adversary not just against me but against the Kaprun victims and survivors' for whom the Court was to be impartial.

Your Honor also become a witness in relation to whatever may or may not occur in the Southern District Disciplinary Committee based on Your Honor's public referral and "complaint", pursuant to Local Rule 1.5 (d) (4).

The Court's opinions about me are/were factually and legally wrong.  The Court's negative opinions about my alleged motives, interests, conflicts and abilities to litigate these claims are/were also wrong and were made without proper findings of fact and/or are/were unsupported by objective facts.   When Your Honor raised your voice and made improper comments about or directed at me at the April 25, 2007 Conference and then again at the July 11, 2007 Conferences, I should have made an immediate record of such inappropriate actions.   *See Exhibit attached.* When Your Honor accused me of *"hullicinating"*, and suggested that I committed a *„felony"*, out or respect for the Court, I held my tongue.   I did not at that time on the record but I do have witnesses who will come forward at the appropriate time.   When Your Honor accused me of committing "crimes", I should have responded forcefully and immediately.  When Your Honor challenged my motives I should have challenged the Court.   When Your Honor behaved in ways that have been reported about Your Honor's conduct in the 2007 publication, Vol, 1 of the Almanac of Federal Judiciary, I should have made an instantaneous record.   *See Exhibit .*

Perhaps as the Court sought to attack me, I should have responded more aggressively.  I chose not to do so in the hopes that my silence would protect my clients' claims.  Again I was wrong. I should have spoken up before now.  I should have proudly reminded the Court that I have devoted my life's work to the fight for victims' justice.  I have not won every Court case but I have always litigated the cases and at time even against some of the biggest firms in the world. In particular, have spent the last 12 years of my life for fighting victims' many of whom had no one but me to fight for them.   And, I spent the last 7 years of my life fighting for Kaprun victims and survivors. As an officer of the Court with over 25 years of experience I have always tried to show my respect for the Judiciary, respect for the institution of the Court and respect for Your Honor.   I did so even as Your Honor attacked me.   I believed that if I held my tongue and restrained my clients' from speaking out, that Your Honor would come to her senses and realize how wrong you were and see the objective evidence that was being presented to you.   I was wrong and the issues can and should no longer be restrained.

Kaprun victims and survivors are in *extremis*. Your Honor's actions are making matters worse. It is therefore now incumbent upon Kaprun victims and survivors, my colleague European and

# EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 6*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*(SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*et al 07-cv-3881 (SAS)(THK); Ferk et al v. Omniglow Corporation et al 07-cv-4104 (SAS)(THK)*

----------------------------

Japanese counsel and the victim and survivor family representatives and me to take these actions. With this evidence and record, Kaprun victims and survivors have to withstand lengthy appeals process just to show Your Honor's decisions since April 2007 must be vacated. Some Kaprun victims and survivors have suffered strokes, heart attacks, others contracted diseases or debilitating physical and/or emotional illnesses, others are diagnosed with cancer, others suffer from difficult financial circumstances and have difficulty sustaining themselves and their families, other families live at poverty level, having lost businesses or primary person supporting the family, and all families are permanently traumatized for the rest of their lives due to the Kaprun disaster. Their situation calls for immediate action and I submit the first step is the Court granting the relief sought herein.

Your Honor's comment in the Sept. 28, 2007 Telephone Conference in which you stated to Defendants' counsel *"see you next year"* - an obvious reference to how long the appeals process would take - demonstrated the type of callous indifference to the Kaprun victims claims that I submit led or contributed to years of confusion and delay in bringing these cases to conclusion. Instead, of moving the cases forward, the Court choose to simply attempt to send Kaprun victims and survivors claims to Austria where as the Court knows, the cases are *"dead on arrival"*.

The Kaprun victims and survivors cannot and should not have to wait any longer for the justice and due process, that has been deprived them, in no small part by Your Honor's bias, prejudice, extra-judicial contacts, and legally and factually erroneous rulings.

After April 25, 2007, Your Honor's opinions of the claims and counsel were tainted, biased and prejudiced against Kaprun victims and survivors. Your Honor's duty was to expedite resolution of the claims after impartial consideration of objective evidence properly before the Court. However, that is not what happened. Your Honor formed certain beliefs including how to force a settlement of the cases. Then Your Honor sought to impose these beliefs on Kaprun victims and survivors. Your Honor did this by entering Orders that were unsupported by objective facts and law. Your Honor formed these erroneous beliefs after entertaining extra-judicial contacts with non-party hostile witness Dr. Johannes Stieldorf. Dr. Stieldorf sought to and did in fact poison Your Honor's mind toward the merits of Kaprun victims and survivors' claims and to motives of everyone else in the case – except of course his own motives. As a result of these extra-judicial and improper contacts, Your Honor took actions to force Kaprun victims and survivors with legitimate clams in the United States to have to go to Austria, which the Court knew provided no forum. The Court did this because that is where the extra judicial and hostile witness Stieldorf told Your Honor that Kaprun victims and survivors would be better off. Your Honor's actions since April 2007 can be traced directly to these extra-judicial contacts with this particular non-party hostile witness and to the misleading and prejudicial information he provided to the Court. The Sept. 25, 2007 official findings of the German Prosecutor and Court also support Kaprun victims and survivors' prior statements that the information given to Your Honor in these extra-judicial contacts were false and should never have been considered.

# EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 7*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*    et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*    (SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*    Robert Bosch Corp et al 07-CV-935 (SAS)(THK);  Stadman et al v. Austrian National Tourist Office*
*    et al 07-cv-3881 (SAS)(THK); Ferk et al v. Omniglow Corporation et al 07-cv-4104 (SAS)(THK)*

---------------------------

Declarations can be submitted to show how Court decisions since April 2007 were based on/influenced by information the Court should never have considered.  Declarations can also be submitted to show how Your Honor's improper and erroneous rulings appear to have been an attempt to force the parties to discuss settlement in Austria rather than to deal with the US claims in the Court where they were pending and based upon applications made to compel the parties to return to Judge Katz or to have a Special Master appointed. *See excerpts from Aug. 2006 Hearing and Feb. 2007 Motions related to appointment of a Special Master.*

The Kaprun claims have been a procedural nightmare that could have been cured had the Court issued proper and formal consolidation and kept track of pending Motions and remembered what happened from one Conference to another.  The problems were compounded by Your Honor's failure to recall rulings made, delay in the entry of rulings, failure to issue formal rulings and findings of fact, failing to understand the authority and standing given pursuant to Powers of Attorney, indulging Defendants in filing piecemeal and duplicative Motions and failing to cause rulings to be entered and properly docketed in all cases. *See excerpts from Dockets.*

At the beginning of the Kaprun cases, I believed Your Honor was capable of putting the best interests of Kaprun victims and survivors, and indeed all parties' rights, ahead of other issues. Until April 2007, the Court demonstrated no bias or prejudice against Kaprun victim and/or survivor claims, European and Japanese Cooperating Counsel or victims and/or survivors representatives or me.  However, in the last year, Your Honor's actions were filled with bias, prejudice and an inability to impartially consider objective evidence or to move the cases.

These cases could and should have been over by now or at least assigned out for trial.  I submit that they can still be over or assigned out for trial in less than one (1) year.  However, that can only happen, if Your Honor immediately recuses herself so that an independent Judge can proceed with the vacatur of Your Honor's rulings and setting the cases down for trials.

Authority for the Court's recusal was provided in support of prior Recusal Motions pursuant to 28 USC §§ 144 & 455, copies of which are incorporated herein by reference.  See Affidavits of Bias by Dr. Bernd Geier, Dr. Toichiro Kigaw filed in June, July and Aug. 2007.  Based on the new facts and evidence mentioned above, and Your Honor's actions since Aug. 16, 2007, additional authority for Your Honor's recusal can be found in the following cases. *See Sobel v. Yeshiva University 839, F. 2d 18, 37 (2ⁿᵈ Cir. 1988), In Re Neuman, 124 B. R. 155, 160 (S.D.N.Y. 1991 – Judge Wood); Davis & Cox v Summa Corp. 751 F.2d 1507, 1523-1524 (9ᵗʰ Cir. 1985); Matter of Yagman 796 F. 2d 1165, 1187-1188 (9ᵗʰ Cir. 1986); and Standing Committee v. Yagman 55 F.3d 1430, 1442-1445 (9ᵗʰ Cir. 1995).*

With the evidence since April 2007 and as reinforced by the Sept. 25, 2007 Official Findings of German Prosecutor, Plaintiffs European and Japanese Cooperating counsel and/or Kaprun victims, survivors and/or their representatives and I are now ready to speak out against what we

# EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 8*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*(SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*et al 07-cv-3881 (SAS)(THK); Ferk et al v. Omniglow Corporation et al 07-cv-4104 (SAS)(THK)*

----------------------------

all believe are/were Your Honor's improper actions.   On behalf of us all, I submit the conclusion
of the 9th Circuit in *Standing Committee v. Yagman, supra,* is instructive.   In reversing sanctions
against attorney Yagman imposed by District Judge Real, the 9th Circuit panel stated:

> *We can't improve on the words of Justice Black in Bridges, 314, US at 2701-71,*
> *62 S.Ct. at 197-98 (footnote omitted):*
> > *The assumption that respect for the judiciary can be won by shielding*
> > *judges from public criticism wrongly appraises the character of the*
> > *American public opinion.  For it is a prized American privilege to speak*
> > *one's mind, although not always with perfect good taste, on all public*
> > *institutions.  And, and enforced silence, however limited, solely in the*
> > *name of preserving the dignity of the bench, would probably engender*
> > *resentment, suspicion and contempt much more than it would enhance*
> > *respect.*
> > > *See Standing Committee v Yagman, supra at page. 1445.*

We submit that the objective evidence shows that Your Honor has been wrong since April 2007.
We further submit that the evidence also shows that Your Honor rulings were fashioned around
or predicated upon an inappropriate opinion of how to get rid of the cases and opinions of what
is/was in the best interests of the Kaprun victims and survivors, and also depriving them of due
process.   Such decisions were not Your Honors to make, they were not within the scope of Your
Honor's authority as the trial judge in these cases and they were contrary to the facts, evidence
and objective record and history of these cases.

For all the above reasons, Your Honor simply should not sit on any of these cases.   Your Honor
should simply recuse herself now without forcing the Kaprun victim and survivor plaintiffs and
their representatives, the European and Japanese Cooperating Counsel, Mr. Hantman and I to
renew the Recusal Motion based on these new facts and circumstances.

This suggestion is made so the parties can avoid the lengthy and increasingly frustrating process
of having to litigate these issues in a Court that will not give them fair consideration.   I make
this suggestion because it is in the best interests of the District Court, the Court of Appeals and
even Your Honor's interests.   An immediate recusal would promote the expeditious and
effective administration of justice by saving the Courts and the parties lengthy and heated
Motion practice and unnecessary judicial and/or administrative inquiries into anyone's conduct.
Finally and perhaps most importantly, Your Honor's recusal would allow Kaprun victims and
survivors to have cases that languished (in part because of Your Honor's erroneous rulings) to
finally come to an expeditious end, which would save unnecessary waste of additional months
and years in the District Court and in the Court of Appeals.

# EDWARD D. FAGAN ESQ.

*Hon. Shira A. Scheindlin USDJ –13 December 2007 Pre-Motion Conference Letter –Page 9*
*Re:In Re:Ski Train Fire in Kaprun Austria on November 11, 2000, MDL # 1428 (SAS)(THK); Blaimauer*
*et al v. Omniglow et al, 03-CV-8960 (SAS)(THK); Geier et al v. Omniglow et al, 03-CV-8961*
*(SAS)(THK); Mitsumoto et al v. Republic of Austria et al, 06-CV-2811 (SAS)(THK); Mitsumoto et al v.*
*Robert Bosch Corp et al 07-CV-935 (SAS)(THK); Stadman et al v. Austrian National Tourist Office*
*et al 07-cv-3881 (SAS)(THK); Ferk et al v. Omniglow Corporation et al 07-cv-4104 (SAS)(THK)*

----------------------------

Therefore, to save the District Court, the Court of Appeals and even potentially the persons who sit on the Disciplinary Committee of the District Court to which you publicly referred me in the Aug. 16, 2007 Opinion and Order, I urge Your Honor to :

- Consider the *sua sponte* vacatur of all Orders since June 2007;

- Recuse yourself from these cases and inform the Chief Judge that the cases should be expeditiously randomly reassigned to another Judge before whom Plaintiffs' Rule 60 (b) Motions can be brought;

- Directing the parties to submit any opposition to this letter by December 19, 2007; or

- Convening an expedited pre-Motion Conference so that a proper record can be made upon which to base the request for expedited relief.

And, as always, thank you for the Court's continued attention and time in these cases.

Respectfully submitted,

Edward D. Fagan

EDF/
Attachments provided with the hard copy of this letter

Ccs:   All counsel of record – Via Electronic Delivery
       Foreign Plaintiffs' Counsel of Record in all cases
       Robert Hantman Esq

EXHIBIT   3

COUNTY CLERK'S OFFICE

NOV 19 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
Edward D. Fagan Esq,                           :.
Dr. Bernd Geier,                               :
Dr. Gerhard Podovsovnik,                       :
                              Plaintiffs        :

      - vs -                                    :
                                                :
James F. Lowy Esq.                             :
International Law Group LLC,                    :
Florida Law Group LLC,                         :
Michael R. Perle Esq., and                     :
Michael R. Perle P.C.                          :
                              Defendants.       :
-----------------------------------------------------------X

INDEX #

07-115473

Date Filed:

Nov. 19, 2007

COMPLAINT
WITH JURY TRIAL DEMANDED

## INTRODUCTION

This case is based upon negligence and malpractice, including unauthorized disclosures
of confidential and privileged materials, with reckless disregard to the consequences and the
damages caused to clients, former clients and persons to whom Defendants owed duties of care.

## PARTIES

1) Plaintiff Edward D. Fagan (hereinafter "Fagan") is a lawyer licensed to practice in New York
   State who maintains offices at 5 Penn Plaza, 23rd Floor, New York, NY 10001.

2) Plaintiff Dr. Bernd Geier (hereinafter "Geier") is citizen of the Federal Republic of Germany,
   who lives in Munich, and who is the personal representative of and holder of a Valid Power
   of Attorney for his father who was a victim of a ski train and tunnel fire that occurred on
   Nov. 11, 2000 in Kaprun Austria (hereinafter "The Kaprun Disaster").

3) Plaintiff Dr. Gerhard Podovsovnik (hereinafter "Podovsovnik") is citizen of the Republic of
   Austria, who lives in Vienna, Austria, and who is an attorney and a legal representative of
   and holder of Valid Powers of Attorney for victims and survivors of The Kaprun Disaster.

4) Defendant James F. Lowy Esq. ("Lowy") is a Florida lawyer who applied for admission to the New York Bar.

5) Defendant Florida Law Group LLC ("FLG") is a Florida law firm through which Defendant Lowy solicits and/or solicited clients and/or conducts legal business in New York.

6) Defendant International Law Group LLC ("ILG") is a Florida based law firm through which Defendant Lowy solicits and/or solicited clients and/or conducts business in and maintains an Annex Office in New York.

7) Defendant Michael R. Perle Esq. ("Perle") is a lawyer licensed to practice law in the State of New York.

8) Defendant Michael R. Perle P.C. ("Perle PC") is New Jersey law firm through which Defendant Perle conducts business in NY.

## JURISDICTION & VENUE

9) The Court has jurisdiction, and venue is proper in New York County, over Defendants Lowy, FLG and ILG, pursuant to CPLR §§ 301 and 302 by virtue of Defendants Lowy & ILG maintenance of an office at 5 Penn Plaza, 23rd Floor, New York, NY 10001, telephone number in New York City (646) 378-2225 and over Defendant FLG by virtue of its systematic continuous and ongoing conducting and/or solicitation of business, including but not limited to appearing in lawsuits and providing legal advise to persons, in New York.

10) The Court has jurisdiction over Defendant Perle and Perle PC pursuant to CPLR § 301 by virtue of Defendant Perle's residence in New York at 50 West 96th Street, New York, NY 10050 Defendant Perle's alleged maintenance of offices in NY[1] and by virtue of Defendant

---

[1] Plaintiffs have searched for any actual office in NY for Defendant Perle and have found nothing despite Defendant Perle's contentions to the contrary.   There is no listing in NY phone directories for such an office. The Office of Court Administration has no listing of an office in NY office.   Plaintiffs have repeatedly requested disclosure by Defendants of an office, phone and fax number in NY but have yet to receive such information.

*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 2*

Perle's ongoing conduct of business in new York and representation in matters in and before New York State and Federal Court.

11) Venue is proper in this Court by virtue of Defendants acts and efforts to interfere with Plaintiffs business in New York.

## FACTS RELEVANT TO CAUSES OF ACTION

12) In November 2000 Plaintiff Fagan started to work for victims of The Kaprun Disaster.

13) Starting in January 2001, Plaintiff Fagan was working for victims, survivors and/or family representatives of The Kaprun Disaster by filing and prosecuting negligence, product liability and cases in the United States (hereinafter "The Kaprun Cases").

14) Plaintiff Geier is the son of Hermann Geier a survivor of The Kaprun Disaster and a Plaintiff in The Kaprun Cases.

15) Plaintiff Podovsovnik is an Austrian lawyer who has been working with Plaintiff Fagan in The Kaprun Cases for years.

16) In early 2006, Defendants Lowy and FLG entered into an agreement with Plaintiff Fagan through which he was to provide legal work and funding and help to organize future additional funding for The Kaprun Cases.

17) From early 2006 forward, Defendants Lowy and FLG gained access to confidential, privileged and proprietary information related to The Kaprun Cases.

18) Defendants Lowy and FLG did not do the legal work that he and his firm was required to perform for The Kaprun Cases.

19) Defendants Lowy and FLG did not provide the funding and did not help to organize additional funding for The Kaprun Cases.

20) In early spring 2006, Plaintiff Fagan approached Defendant Perle and his principal client Harvey Grossman ("Grossman") of Lions Group Ltd. ("LGL")[2] to assist him with the further prosecution of The Kaprun Cases.

21) By virtue of Defendant Perle's position as counsel for Grossman and LGL, Defendant Perle had a special relationship and/or owed a duty to Plaintiff Fagan to:

   a) assist and/or not interfere with Plaintiff Fagan's business;

   b) assist and/or not interfere with Plaintiff Fagan's relationship with creditors including Grossman and LGL;

   c) assist and/or not interfere with Plaintiff Fagan's ability to prosecute The Kaprun Cases; and

   d) refrain from interfering in or taking actions that could prejudice Plaintiff Fagan's interests in The Kaprun Cases.

22) By virtue of Defendant Perle's position as counsel for Grossman and LGL and special relationship with Plaintiff Fagan, Defendant Perle gained access to confidential, privileged and proprietary information about Plaintiff Fagan and The Kaprun Cases.

23) Defendant Perle was in a unique position to assist Plaintiff Fagan with nominal funding for The Kaprun Cases, and to support Plaintiff Fagan's prosecution of The Kaprun Cases.

24) Instead of helping, in the spring of 2006 Defendant Perle refused to help with prosecution or with nominal funding for Plaintiff Fagan's prosecution of The Kaprun Cases.

---

[2] Grossman and LGL were funders of various of Plaintiff Fagan's cases since 1999. Grossman and LGL were paid back the entire principal borrowed. Grossman and LGL are attempting to collect what amounts to usurious interest, which issue has already been raised in the context of a proceeding in which Plaintiff Fagan, Grossman and LGL were/are adversaries and Defendant Perle is counsel for Grossman and LGL. Plaintiff Fagan recently learned that Grossman and LGL have purported to file security statements in different jurisdictions without Plaintiff Fagan's prior knowledge or consent. These issues will either be handled in separate proceedings or Grossman and LGL will be added as a future Defendant in this case for his interference with Plaintiff Fagan's business directly and through his agent Defendant Perle.

----------------------
*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 4*

25) From early spring 2006 forward, Defendants Lowy and FLG gained access to confidential, privileged and proprietary information related to The Kaprun Cases.

26) During this time, Defendants Lowy and FLG brought Lowy's other entity ILG into the relationship with Plaintiff Fagan.

27) From early spring 2006 forward, Defendant ILG gained access to confidential, privileged and proprietary information related to The Kaprun Cases.

28) Plaintiff Fagan introduced Defendants Lowy, FLG and ILG to Plaintiffs Geier and Podovsovnik so that they could all work together on The Kaprun Cases.

29) From spring 2006 forward, Defendants Lowy, FLG and ILG began to enter appearances/were identified as counsel for victims, survivors and family representatives in The Kaprun Cases.

30) Through Plaintiff Fagan, Defendants Lowy, FLG and ILG entered into an attorney client relationship with victims, survivors and/or family representatives in The Kaprun Cases.

31) Defendants Lowy, FLG and ILG had an obligation to assist Plaintiff Fagan with the prosecution of The Kaprun Cases.

32) Defendants Lowy, FLG and ILG had an obligation to use the Confidential Information[3] they learned through the attorney client relationship for the benefit of victims, survivors and/or family representatives in The Kaprun Cases.

33) As co-counsel to Plaintiff Fagan in The Kaprun Cases, Defendants Lowy, FLG and ILG had an obligation to refrain from disclosing and preserving Confidential Information learned through the attorney client relationship related to The Kaprun Cases for the benefit of victims, survivors and/or family representatives in The Kaprun Cases.

---

[3] Confidential Information includes attorney client, work product, personal data related to clients, survivors and/or family representatives, agreements with counsel, consultants and researchers activities, emails, letters, settlement strategies, litigation strategies, appellate strategies, target Defendants, theories of liability, areas of strengths and weaknesses in claims, identity of witnesses, experts opinions and theories of liability, strategies related to presentations to court, errors and omissions, interaction between parties, counsel and Defendants.

*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 5*

34) Defendants Lowy, FLG and ILG entered into commitments and/or obligated themselves to pay expenses including but not limited to expenses for Court Reporters, investigators, experts, consultants and researchers in The Kaprun Cases.

35) Defendants Lowy, FLG and ILG failed and/or refused to pay expenses for Court Reporters, investigators, experts, consultants and researchers in The Kaprun Cases.

36) Not only did Defendants Lowy, FLG and ILG fail and/or refuse to pay expenses for which they committed themselves, but they attempted to shift the blame and/or failure to pay the bills[4] to Plaintiff Fagan.

37) Defendants Lowy, FLG and ILG failed and/or refused to do work on filed motions or to assist in discovery related to The Kaprun Cases.

38) By way of example only:

    a) Defendant Lowy did not appear on time for meetings or depositions;

    b) Defendant Lowy failed to assist with certain depositions related to the claims of victims, survivors and their family representatives in The Kaprun Cases; and

    c) Defendant Lowy failed and/or refused to provide an Affidavit related to his first hand knowledge of threats and intimidation of witnesses in The Kaprun Cases and which information was important to The Kaprun Cases and to Plaintiff Fagan.

39) Defendants Lowy, FLG and ILG failed and/or refused to provide Affidavits related to the evidence and/or facts which they knew existed and which they knew were necessary to Plaintiffs ability to prosecute The Kaprun Cases.

---

[4] Some of the bills that Defendants Lowy, FLG and ILG failed to pay were bills related to expert Dr. Carl Abraham, Investigator Ken Torres and Court Reporter Candace Flowers.

---

*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 6*

40) After The Kaprun Cases were dismissed in June 2007, despite requests for assistance Defendants Lowy, FLG and ILG failed and/or refused to provide assistance and/or financial support necessary to Motions for Reconsideration and/or appeals.

41) After Plaintiff Fagan was disqualified in The Kaprun Cases, despite requests for assistance Defendants Lowy, FLG and ILG failed to timely assist with The Kaprun Appeals.

42) From early 2006 to present, Defendants Lowy, FLG and ILG were privy to Confidential Information being generated and/or exchanged by and/or between Plaintiff Fagan, Plaintiff Geier, Plaintiff Podovsovnik and other lawyers and/or victims involved with them in The Kaprun Cases and The Kaprun Appeals.

43) From June 2007 forward, Defendants Lowy, FLG and ILG became privy to confidential and proprietary information being generated and/or exchanged by and/or between Plaintiff Fagan, Plaintiff Geier, Plaintiff Podovsovnik and other lawyers and/or victims involved with them in The Kaprun Cases and specifically related to the Motions for Reconsideration, Motions for Recusal, Motions to Supplement the Record, The Kaprun Appeals and other strategies.

44) After Plaintiff Fagan was disqualified and when Defendants Lowy, FLG and ILG knew or should have known that the disqualification was based on errors of fact and law, Defendants Lowy, FLG and ILG did little or nothing to help The Kaprun Cases or The Kaprun Appeals.

45) After Plaintiff Fagan was disqualified, Plaintiff Geier, Plaintiff Podovsovnik and other victims, survivors and/or representatives and Cooperating Counsel gave Defendants Lowy, FLG and ILG verbal and/or written instructions about what he could and could not do.

46) After Plaintiff Fagan was disqualified, Defendants Lowy and FLG failed and/or refused to follow the instructions and/or directions of Plaintiff Geier, Plaintiff Podovsovnik and other victims, survivors and/or representatives and Cooperating Counsel.

---------------------

40) After The Kaprun Cases were dismissed in June 2007, despite requests for assistance Defendants Lowy, FLG and ILG failed and/or refused to provide assistance and/or financial support necessary to Motions for Reconsideration and/or appeals.

41) After Plaintiff Fagan was disqualified in The Kaprun Cases, despite requests for assistance Defendants Lowy, FLG and ILG failed to timely assist with The Kaprun Appeals.

42) From early 2006 to present, Defendants Lowy, FLG and ILG were privy to Confidential Information being generated and/or exchanged by and/or between Plaintiff Fagan, Plaintiff Geier, Plaintiff Podovsovnik and other lawyers and/or victims involved with them in The Kaprun Cases and The Kaprun Appeals.

43) From June 2007 forward, Defendants Lowy, FLG and ILG became privy to confidential and proprietary information being generated and/or exchanged by and/or between Plaintiff Fagan, Plaintiff Geier, Plaintiff Podovsovnik and other lawyers and/or victims involved with them in The Kaprun Cases and specifically related to the Motions for Reconsideration, Motions for Recusal, Motions to Supplement the Record, The Kaprun Appeals and other strategies.

44) After Plaintiff Fagan was disqualified and when Defendants Lowy, FLG and ILG knew or should have known that the disqualification was based on errors of fact and law, Defendants Lowy, FLG and ILG did little or nothing to help The Kaprun Cases or The Kaprun Appeals.

45) After Plaintiff Fagan was disqualified, Plaintiff Geier, Plaintiff Podovsovnik and other victims, survivors and/or representatives and Cooperating Counsel gave Defendants Lowy, FLG and ILG verbal and/or written instructions about what he could and could not do.

46) After Plaintiff Fagan was disqualified, Defendants Lowy and FLG failed and/or refused to follow the instructions and/or directions of Plaintiff Geier, Plaintiff Podovsovnik and other victims, survivors and/or representatives and Cooperating Counsel.

----------------------

47) In September 2007, without prior consultation with Plaintiff Fagan and without Plaintiff Fagan being copied on communications, Defendants Lowy and FLG attempted to solicit Plaintiff Geier, Plaintiff Podovsovnik and other victims, survivors and/or representatives and Cooperating Counsel to retain them.

48) Defendants Lowy, FLG and ILG are not competent to handle The Kaprun Cases alone.

49) During the period from early 2006 to June 2007, Defendants Lowy and FLG failed to learn the claims, the legal theories upon which the claims were based, the involvement of each Defendant, the facts and expert evidence upon which the claims against the Defendants were based or any other aspect of the case so that they could provide meaningful assistance or assume legal responsibility for any aspect of The Kaprun Cases or The Kaprun Appeals.

50) After The Kaprun Cases were dismissed, Defendants Lowy and FLG failed to learn the legal theories, facts or evidence upon which the Motions for Reconsideration were based.

51) After The Kaprun Cases were dismissed, Defendants Lowy and FLG failed to learn the legal theories, facts or evidence upon which The Kaprun Appeals were based.

52) Defendant Lowy started to use Defendant ILG through which he intended to act in The Kaprun Cases and The Kaprun Appeals.

53) Defendants Lowy, FLG and ILG tried to solicit Plaintiff Fagan's clients in The Kaprun Cases and The Kaprun Appeals without consultation and/or knowledge of Plaintiff Fagan.

54) At the time Defendants Lowy, FLG and ILG tried to solicit Plaintiff Fagan's clients in The Kaprun Cases and The Kaprun Appeals, Defendant Lowy, FLG and ILG were not competent to represent the clients and intended to take the clients just to try to settle claims cheaply so they Defendants Lowy, FLG and ILG could try to recover some of the expenses they paid toward the prosecution of the case but without regard to the true value of the case.

---------------------

*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 8*

55) On September 14, 2007, The Kaprun Appeal was filed and docketed by Plaintiff Fagan, on behalf of Plaintiffs Geier and Podovsovnik, and the victims, survivors and/or family representatives in The Kaprun Cases on whose behalf Plaintiffs Geier and Podovsovnik worked and from whom they had Valid Powers of Attorney.

56) On September 20, 2007, The Kaprun Appeal was amended to include additional Orders from which appeals were being taken.

57) From September 18 – 21, 2007, Defendant Lowy claimed that the Court was "pressuring" him to take action related to The Kaprun Cases or The Kaprun Appeals.

58) During the period from September 20 to 25, 2007, Plaintiffs Fagan, Geier and Podovsovnik (through Plaintiff Fagan) suggested to Defendant Lowy that (i) he should do nothing to prejudice The Kaprun Appeals, (ii) if the Court wanted him to appear he should appear and inform the Court that he had no authority to act and that he had no Retainers, and (iii) he should make no representation that he was competent or prepared to assume or resume or make decisions with regard to the prosecution of The Kaprun Cases, the Motion for Reconsideration or The Kaprun Appeals.

59) Contrary to the suggestions, instructions and/or warnings, on September 24, 2007, Defendant Lowy wrote the Court and stated:

   a) *"the foreign Plaintiffs have previously retained me, along with Mr. Fagan"* ; and

   b) *"I have confirmation that at least some of the clients would continue to have me represent them"*.

60) Defendant Lowy's statements were untrue and misleading.

61) From September 25 – 28, 2007, again with notification of, consultation with and/or consent of Plaintiff Fagan, Defendants Lowy, FLG and ILG wrote multiple emails in which they

sought to get Plaintiff Fagan's clients, including but not limited to Plaintiff Geier and

Plaintiff Podovsovnik's clients, to enter into Retainer Agreements with Defendants Lowy,

FLG and ILG.

62) During this time, Defendants Lowy, FLG and ILG wanted to sever their relationship with

Plaintiff Fagan and try to settle The Kaprun Cases and The Kaprun Appeals on their own.

63) To accomplish this, during this period of time, Defendants Lowy, FLG and ILG sought to

create and/of cause anxiety, confusion and/or fear of Plaintiff Fagan's clients, including but

not limited to Plaintiff Geier and Plaintiff Podovsovnik's, so that they would enter into

Retainer Agreements with Defendants Lowy, FLG and ILG.

64) During this period, The Kaprun Appeals were pending and there were sensitive strategy and

issues being discussed in emails related to The Kaprun Appeals and The Kaprun Cases.

65) During this period, Defendants Lowy, FLG and ILG were apparently also communicating

electronically and/or by telephone with the District Court Judge in The Kaprun Cases.

66) When Plaintiffs discovered what Defendants Lowy, FLG and ILG were doing, they tried to

stop them and attempted to explain the potential serious problems that could they cause for

the overall claims and legal strategies related to The Kaprun Cases and The Kaprun Appeal.

67) Plaintiffs Fagan, Plaintiff Geier and Plaintiff Podovsovnik again gave Defendants Lowy,

FLG and ILG specific instructions to take no action and to do nothing to prejudice The

Kaprun Appeals or The Kaprun Cases.

68) Defendants Lowy, FLG and ILG informed Plaintiffs that the Court scheduled and he was

going to take part in a telephone Conference on September 28, 2007.

69) Plaintiffs again instructed Defendants Lowy, FLG and ILG that he should inform the District

Court Judge that he had no retainer agreements and as such he had not authority from

---------------------

*Fagan et al v. Lowy et al – November 2007 – Complaint – Page 10*

victims, survivors and/or family representatives, including Plaintiffs, to participate in the scheduled telephone Conference.

70) Defendants Lowy, FLG and ILG withheld from Plaintiffs what the agenda was for and why the District Court Judge or defendants requested the scheduled telephone Conference.

71) Defendants Lowy, FLG and ILG misled Plaintiffs about what the agenda was for and what occurred at the scheduled telephone Conference.

72) Plaintiffs obtained a copy of the transcript of the September 28, 2007 telephone conference and discovered the extent of Defendants Lowy, FLG and ILG misrepresentations to the District Court, defendants in The Kaprun Cases and The Kaprun Appeals, became known as well as how these actions adversely impacted The Kaprun Cases and The Kaprun Appeals.

73) Defendants Lowy, FLG and ILG misled Plaintiffs about what occurred and what they did during the September 28, 2007 Telephone Conference.

74) Plaintiffs discovered that, among other things, during the September 28, 2007 Telephone Conference Defendant Lowy, FLG and ILG:

   a) Misrepresented their retention;

   b) Misrepresented their authority and/or Plaintiffs intentions/wishes;

   c) Made additional improper and unauthorized statements;

   d) Disclosured Confidential and/or Privileged Information;

   e) Took unauthorized actions; and

   f) Committed to do things for which they had no authority.

75) After the wrongful and unauthorized acts were discovered, Plaintiffs Fagan, Geier and Podovsovnik again demanded that Defendants Lowy, FLG and ILG do nothing further, make

no statements and preserve the work product and confidential litigation and appellate strategies and Confidential Information.

76) In response, instead of honoring the instructions, Defendants Lowy, FLG and ILG continued to engage in actions that interfered with The Kaprun Cases and The Kaprun Appeals.

77) From mid-October 2007, the wrongful acts of Defendant Lowy, FLG and ILG increased.

78) From mid-October 2007, Plaintiffs tried in vain to get Defendant Lowy, FLG and ILG to cease and desist and to keep the confidential information that belonged to Plaintiffs and which was learned from The Kaprun Cases from being disclosed to third parties.

79) In or about the end of October or beginning of November, 2007, Defendants Lowy, FLG and ILG retained Defendants Perle and Perle PC to protect their interest in their disagreements with Plaintiff Fagan related to The Kaprun Cases and The Kaprun Appeals.

80) At that time, because of their special relationship with Plaintiff Fagan, Defendant Perle and Perle PC had a duty to refrain from representing Defendants Lowy, FLG and ILG against Plaintiff Fagan's interests as they related to The Kaprun Cases and The Kaprun Appeals.

81) Defendants Lowy, FLG and ILG hired Defendant Perle and Perle PC because of Confidential Information they knew and which they agreed and/or intended to use against Plaintiff Fagan.

82) Defendant Perle's or Perle PC's purpose in agreeing to represent Defendants Lowy, FLG and ILG was motivated by their intention to interfere with Plaintiff Fagan's interests in The Kaprun Cases for benefit of Defendant Perle's or Perle PC's client Grossman and LGL.

83) In an attempt to gain unfair leverage over Plaintiff Fagan, Defendants Lowy, FLG, ILG, Perle and Perle PC planned to disclose and/or make public Confidential Information related to The Kaprun Cases and The Kaprun Appeals.

----------------------

84) The attempt to gain unfair leverage over Plaintiff Fagan, Defendants Lowy, FLG, ILG, Perle and Perle PC through the unauthorized disclosure or making public Confidential Information related to The Kaprun Cases and The Kaprun Appeals, was improper, unlawful and/or in violation of their duties as lawyers to former clients and/or lawyers toward adversaries.

85) Defendants Lowy, FLG, ILG, Perle and Perle PC believed that the disclosure and/or making public Confidential Information related to The Kaprun Cases and The Kaprun Appeals, would cause Plaintiff Fagan to drop his claims against Defendants Lowy, FLG and ILG Defendant Perle's client Grossman and LGL.

86) Defendants Lowy, FLG, ILG, Perle and Perle PC were willing to disclose and/or make public the Confidential Information related to The Kaprun Cases despite the fact that to do so would prejudice The Kaprun Cases and The Kaprun Appeals and/or otherwise injure Plaintiff Geier and Plaintiff Podovsovnik's clients.

87) On Friday November 16, 2007, Plaintiff Fagan discovered that Defendants Lowy, FLG, ILG, Perle and Perle PC started publishing Confidential Information related to The Kaprun Cases and The Kaprun Appeals.

88) Plaintiff Fagan on behalf of Plaintiffs Geier, Podovsovnik and other victims and/or survivors involved with The Kaprun Cases, wrote Defendants Lowy, FLG, ILG, Perle and Perle PC have sought to stop Defendants unauthorized disclosure, publication and filing of Confidential Information in Court documents related to a dispute between Fagan and Lowy.

89) Defendants Lowy, FLG, ILG, Perle and Perle PC failed to take the necessary steps to cease the disclosure or publication of Confidential Information related to The Kaprun Cases and The Kaprun Appeals.

----------------------

90) The disclosure and/or publication of Confidential Information related to The Kaprun Cases was not protected by any privilege because it was done with malice and/or with intention to cause damage to Plaintiff Fagan's business, Plaintiff Podovsovnik's business and to claims of Plaintiff Geier's father and the claims of Plaintiffs Fagan and Podovsovnik's clients in The Kaprun Cases or The Kaprun Appeals.

91) The disclosure and/or publication of Confidential Information related to The Kaprun Cases was of sensitive information related to The Kaprun Cases and the appeal adversely affects and prejudices Plaintiff Fagan's business, Plaintiff Podovsovnik's business and to the claim of Plaintiff Geier's father and to claims of Plaintiffs Fagan and Podovsovnik's clients in The Kaprun Cases or The Kaprun Appeals.

92) The disclosure and/or publication of Confidential Information related to The Kaprun Cases was of sensitive information related to The Kaprun Cases and The Kaprun Appeal adversely affects and prejudices Plaintiff Fagan's business, Plaintiff Podovsovnik's business and to the claim of Plaintiff Geier's father and the claims of Plaintiffs Fagan and Podovsovnik's clients in The Kaprun Cases or The Kaprun Appeals during a time when they are in the midst of ongoing Settlement discussions related to entities in Austria, the last meeting being November 6, 2007 in Vienna Austria.

93) Defendants Lowy, FLG, ILG, Perle and Perle PC disclosure or publication of Confidential Information related to The Kaprun Cases is the latest in a series of wrongful acts being taken by these Defendants against Plaintiff Fagan and his interests in The Kaprun Cases.

94) Defendants Lowy, FLG, ILG, Perle and Perle PC are in possession of additional Confidential Information related to The Kaprun Cases and The Kaprun Appeal which they threaten to

continue to disclose and/or publish in an effort to gain an advantage over Plaintiff Fagan's interests in The Kaprun Cases.

95) The aforesaid acts of Defendants Lowy, FLG, ILG, Perle and Perle PC are/were negligent, wrongful, tortious and/or improper.

96) The aforesaid acts of Defendants Lowy, FLG, ILG, Perle and Perle PC are/were intended to cause damage to Plaintiffs' business, rights, property and claims.

97) Defendants Lowy, FLG, ILG, Perle and Perle PC acts are/were taken so as to put their personal and/or professional interests ahead of the interests of Plaintiffs or other victims, survivors and/or representatives involved in The Kaprun Cases and The Kaprun Appeals.

98) Defendants Lowy, FLG, ILG, Perle and Perle PC owed certain contractual and/or professional obligations to Plaintiffs Fagan, Geier, Podovsovnik and their clients and other victims, survivors representatives involved in The Kaprun Cases and The Kaprun Appeals.

99) As a direct and proximate result of Defendants Lowy, FLG, ILG, Perle and Perle PC wrongful acts, Plaintiffs suffered monetary and other damages.

## COUNT 1 - NEGLIGENCE

100)    Plaintiffs repeat and reallege the allegations of ¶¶ 12 to 99 above as if the same were set forth fully and at length herein.

101)    Defendants Lowy, FLG, ILG, Perle and Perle PC had a duty and obligations to refrain from careless, reckless, negligent, tortious or improper acts that were designed to or could adversely affect Plaintiffs' business, contracts, claims and/or rights.

102)    As a direct and proximate result of Defendants Lowy, FLG, ILG, Perle and Perle PC's aforesaid careless, reckless, negligent, tortious and/or improper acts, Plaintiffs suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants Lowy, FLG, ILG, Perle and Perle PC jointly severally and/or in the alternative for damages[5] as follows (i) compensatory damages of five million dollars; (ii) exemplary, special and/or punitive damages of ten million dollars; and (iii) attorneys fees, interest and costs of suit.

## COUNT 1I – BREACH OF CONTRACT OR FIDUCIARY DUTY

103)    Plaintiffs repeat and reallege the allegations of ¶¶ 12 to 99 above as if the same were set forth fully and at length herein.

104)    Defendants Lowy, FLG, ILG, Perle and Perle PC entered into oral and/or written contracts with Plaintiffs and/or had fiduciary duties to Plaintiffs.

105)    The oral, written/implied contracts or fiduciary duties required Defendants Lowy, FLG, ILG, Perle and Perle PC to use their best efforts and skills to cooperate and not interfere with The Kaprun Cases or Plaintiff business, claims and rights and not to cheat them.

106)    Defendants Lowy, FLG, ILG, Perle and Perle PC violated the terms of the oral, written or implied contracts and/or fiduciary duties by failing to cooperate and by interfering with The Kaprun Cases and Plaintiff's business, claims and rights.

107)    As a direct and proximate result of Defendants Lowy, FLG, ILG, Perle and Perle PC's aforesaid breach of the terms of the oral, written and/or implied contracts and fiduciary duties, Plaintiffs suffered monetary and other damages.

**WHEREFORE,** Plaintiffs demand judgment against Defendants Lowy, FLG, ILG, Perle and Perle PC jointly severally and/or in the alternative for (i) compensatory damages of five million dollars; (ii) exemplary, special and/or punitive damages of ten million dollars; and (iii) attorneys fees, interests and costs of suit.

---

[5] Damages are based on number of Plaintiffs' clients on whose behalf disclosures adversely affects and/or prejudices. These amounts will be increased as additional individual Plaintiffs claims are joined.

## COUNT 1II – MALPRACTICE

108)     Plaintiffs repeat and reallege the allegations of ¶¶ 12 to 99 above as if the same were set forth fully and at length herein.

109)     Defendants Lowy, FLG, ILG, Perle and Perle PC owed a duty to The Kaprun Cases and to Plaintiffs to perform their legal services in accordance with the applicable standards of care and practice for legal professionals in NY.

110)     Defendants Lowy, FLG, ILG, Perle and Perle PC's aforesaid acts were a violation of their duty to The Kaprun Cases and to Plaintiffs and were not in accordance with the applicable standards of care and practice for legal professionals in NY.

111)     As a direct and proximate result of Defendants Lowy, FLG, ILG, Perle and Perle PC aforesaid acts, Plaintiffs suffered monetary and other damages.

WHEREFORE, Plaintiffs demand judgment against Defendants Lowy, FLG, ILG, Perle and Perle PC jointly severally and/or in the alternative for (i) compensatory damages of five million dollars; (ii) exemplary, special and/or punitive damages of ten million dollars; and (iii) attorneys fees, interests and costs of suit.

## COUNT IV – INJUNCTIVE RELIEF

112)     Plaintiffs repeat and reallege the allegations of ¶¶ 12 to 99 above as if the same were set forth fully and at length herein.

113)     Disclosure and/or publication of Confidential Information related to The Kaprun Cases causes damage to Plaintiff Fagan's business, Plaintiff Podovsovnik's business and to the claims of Plaintiff Geier's father, and Plaintiffs Fagan and Podovsovnik's clients.

114)    Disclosure and/or publication of Confidential Information adversely affects and prejudices The Kaprun Cases and The Kaprun Appeals adversely affects and prejudices Plaintiffs rights and interests.

115)    The aforesaid acts of Defendants Lowy, FLG, ILG, Perle and Perle PC are intended to cause damage to The Kaprun Cases and The Kaprun Appeals.

116)    Defendants aforesaid acts caused injuries and threaten to cause more injuries to The Kaprun Cases and the claims of Plaintiff Geier's father and of Plaintiff Fagan's and Plaintiff Podovsovnik's clients for which there is no adequate remedy at law.

117)    As a direct and proximate result of Defendant wrongful acts, The Kaprun Cases have suffered and will continue to suffer damages for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiffs demands judgment against Defendants Lowy, FLG, ILG, Perle and Perle PC jointly severally and/or in the alternative for (i) injunctive relief to prevent disclosure of Confidential Information, Work Product and/or Attorney Client Privileged Documents including but not limited to personal data related to clients, survivors and/or family representatives, agreements with counsel, consultants and researchers activities, emails, letters, settlement strategies, litigation strategies, appellate strategies, target Defendants, theories of liability, areas of strengths and weaknesses in claims, identity of witnesses, experts opinions and theories of liability, strategies related to presentations to court, errors and omissions, interaction between parties, counsel and Defendants and and (iii) attorneys fees, interests and costs of suit.

Dated:    November 19, 2007          By: _____
          New York, NY                    Edward D. Fagan
                                          5 Penn Plaza, 23rd Floor, New York, NY  10001
                                          Tel. (646) 378-2225 / Fax (646) 417-5558
                                          Email: ed.fagan@global-litigation-partners.com

----------------------