UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ X

**EDWARD D. FAGAN, ESQ.,**
          **Plaintiffs,**

      vs.

**JAMES F. LOWY, ESQ.,
INTERNATIONAL LAW GROUP, LLC,
FLORIDA LAW GROUP, LLC, et Al.,**
          **Defendants.**

_____ X

07-CV -10293(SAS)


**AFFIDAVIT IN SUPPORT OF
ORDER TO SHOW CAUSE
(WITH TEMPORARY RESTRAINTS),
AND DISCHARGE OF THE
TEMPORARY RESTRAINTS IMPOSED
BY THE SUPREME COURT**

State of Florida         :
                          : Ss.
County of Hillsborough  :

      JAMES F. LOWY, being duly sworn, upon his oath, deposes and says as follows:

      1. **Introduction**: I am an attorney at law of the State of Florida. I have passed the New York Bar Examination, and my admission to the New York Bar is currently pending. However, it has been held-up by false and derogatory information conveyed recently by Edward D. Fagan to the First Department Character and Fitness Committee, and a grievance filed by Fagan, based on the same false information which Fagan simultaneously filed with the Florida Bar (Lowy EX 1 and 2.[1]).

      2. I am also a principal of defendants International Law Group, LLC ("ILG"), and Florida Law Group, LLC ("FLG") (collectively, with me, "Lowy defendants"), who, together with Robert J. Hantman, Esq. and Hantman & Associates (collectively "Hantman"), are defendants in the above-captioned case ("the First Case"). The First Case was filed on October 29, 2007 in the

_____

      [1] References in the form " Lowy EX 1" etc. are to the Exhibits annexed to this affidavit. References in the form "Perle EX 1"are to the Exhibits annexed to the accompanying Declaration of Michael R. Perle ("Perle Declaration").

Supreme Court of New York New York County (Ind. No. 114562/2007), and removed to this Court on November 13, 2007. This case is but one of the latest chapters in the continuing saga of Fagan versus the rest of the legal profession.

3. As noted in the Removal Notice, the First Case was closely related to In Re: Ski Train Fire in Kaprun Austria on November 11, 2000, 01-MDL-1428 (i.e., the "Kaprun Cases"), a Multi-District Litigation, and a consolidation for disposition of several cases, including those docketed as 03-CV-8960 (SAS); 03-CV-8961 (SAS); 06-CV-2811(SAS); 07-CV-935 (SA); 07-CV-3881 (SAS); 07-CV-4104 (SAS). The Kaprun Cases relate to claims arising from the deaths of, or injuries to 150+ non-U.S. citizens, as well as U.S. citizens, all of whom were victims of tunnel fire in Kaprun, Austria on November 11, 2000. The non-U.S. citizens allegedly retained Fagan to represent them, or came to be represented by Fagan as result of the MDL consolidation before Judge Scheindlin. I and my firm were recruited by Fagan to become involved in Kaprun. Prior to that my partner Frederick T. Lowe, as result of an Internet search a consultant to assist him to in representing one of our clients in a matter involving German Government commercial paper pre-dating World War II, had located Fagan who held himself out to be an expert in in World War II era reparations claims. After I became involved in Kaprun, the client wound up in an acrimonious dispute with Fagan, and fired him, while continuing the matter with Mr. Lowe.

4. On June 19, 2007, Judge Scheindlin dismissed the claims of the foreign Kaprun plaintiffs represented on forum non conveniens grounds. However, this decision left unaffected the claims of another group of Kaprun plaintiffs, claiming as the survivors of U.S. victims of the Kaprun fire. They are represented by Jay J. Rice, Esq., and Nagel Rice, a New Jersey-based law firm, and several other lawyers. Fagan had formerly been "of counsel" to Nagel Rice, but they acrimoniously parted ways several years before.

5. Also pending at that time was defendants' motion to sanction and disqualify Fagan from further participation in the Kaprun, based on grounds which included various ethics violations and conflicts of interest. Nagel Rice and the other attorneys for the American plaintiffs

joined in the motion to disqualify Fagan. On August 16, 2007, Judge Scheindlin granted the previously pending motion to disqualify and sanction Fagan (Perle EX A, 30-31). In conjunction with the disqualification, the Court imposed a sanction of $5,000 on Fagan, payable immediately, and later awarded defendants' counsel in excess of $45,000 and fees and costs. Fagan has paid neither the sanction nor the fees and costs. After the disqualification was granted, Fagan filed suit against Mr. Rice, Nagel Rice and all of the other attorneys for the American plaintiffs; Fagan v. Jay Rice, Esq., Nagel Rice, et Al., N.Y. Supreme Ct., Ind. No.112892/07 (Perle EX D), but apparently has not served the complaint.

6.    Following the removal of the First Case to this Court on November 13, 2007 Judge Scheindlin accepted an assignment of the First Case under Loc. Civ. Rule 1.6, based on it being related to Kaprun. On December 13, 2007, Fagan filed a motion to recuse Judge Scheindlin from presiding in both the First Case and in the Kaprun Cases (although he was already disqualified in the latter), on the ground of bias, based upon: (i) Judge Scheindlin's conclusion in the August 16 decision that  Fagan in recent years had been engaged in a "pattern of unethical behavior" (often directed at other lawyers) (Exhibit A, 9-10, (iii) her referral of Fagan to the District Disciplinary Committee and (ii) the $5,000 sanction imposed plus the recent award of +$45,000 in fees and costs against Fagan, a total just in Kaprun of +$50,000.

7.    **Fagan's History of Attacking and Suing Other Lawyers and the Second Case**. In the recent recusal motion, filed December 13 Fagan alluded to having filed "an independent action in New York State court on November 19, 2007 [after the removal of the First Case]," i.e., a second action in New York Supreme Court-New York County, Edward D. Fagan, Esq., Dr. Bernd Geier and Dr. Gerhard Podovsovnik vs. James F. Lowy, Esq., International Law Group, Florida Law Group, LLC, Michael R. Perle, Esq., and Michael R. Perle, PC, Index No. 115473/2007 ("the Second Case") (Perle EX B). Service has not been effected in that case.

8.    On December 26, 2007, Judge Scheindlin sua sponte recused herself from presiding further in the First Case, but in a separate order of January 3, 2007, she refused to do so in

Kaprun. Judge Scheindlin pointedly warned that Fagan faced further sanctions if he continued in attempts to reinsert himself into Kaprun by filing motions, etc. (Perle EX C, 3-4).

9. As detailed below and in the Perle Declaration, Fagan has a prior history of attacking and suing formerly allied counsel from whom he has become estranged, a category which over the course of his recent career appears to have included nearly every lawyer who has at one time been an ally. Prior to filing the First and Second case, and Fagan v. Nagel Rice, Fagan previously sued Michael Witti, now also a defendant in Fagan v. Nagel Rice. Fagan v. Witti, N.Y. Supreme Ct.-N.Y. County, Ind. No. 601121/2006. Witti had been Fagan's former co-counsel in various cases including Kaprun. In 2007, Fagan was also sanctioned in the matter of Molefi v. The Oppenheimer Trust, 2007 WL 538547 (E.D.N.Y. 2007) for improperly issuing a subpoena to a non-party lawyer who had formerly been allied with Fagan (Perle EX E).

10. **Fagan's Imperviousness to Money Sanctions or Professional Discipline.** In March 2007, Fagan filed a voluntary bankruptcy petition in Florida, to supersede an involuntary petition pending in New Jersey. He listed debts of some $13.6 million. Parenthetically, on the eve of his filing I suggested to him that he not list me a creditor because of the conflict this created between us as co-counsel in Kaprun. He nonetheless listed me as a creditor to whom he owed at least $100,000. As developed extensively in the disqualification decision (Perle EX A, 8-15), in his bankruptcy filing Fagan asserted that he was banking on receiving a large fee in the then-still viable, but now dismissed Kaprun cases to bail himself-out and fund a plan. His scheduled debts included +$4 million in unpaid malpractice judgments, and +$350,000 in sanctions and costs (plus interest) imposed by the Hon. Shirley W. Kram, U.S.D.J. on August 19, 2005, in Association of Holocaust Victims for Restitution of Artwork, etc. v. Bank Austria Creditanstalt, A.G, 04 CV 3600 (SWK) (Perle EX F). In that case Fagan was found by Judge Kram to committed champerty by bringing suit on behalf of a "plaintiff" which actually was a "fictitious entity" created by Fagan (Perle EX A, 17). Fagan's prior history in the Southern District as a chronic violator of Rule 11 is further detailed in the Perle Declaration. It is clear that with

the recent fee awards in <u>Kaprun</u> Fagan currently owes at least $\pm$ \$415,000 (plus interest) in sanctions, fees and costs.

11. As also noted in the Perle Declaration, Fagan also has been disciplined at least twice in New Jersey (in 2002 and 2003), and is currently charged with intentionally misappropriating over \$480,000 from aged clients. If sustained, I understand such charges would almost surely result in automatic disbarment. Given Fagan's self-proclaimed insolvency, and the prospect that he may soon be losing his law license, he obviously places nothing at risk -- financially or professionally -- by commencing meritless, vexatious litigation directed at other lawyers, creditors or even judges for strategic or retaliatory purposes, and by brazenly continuing to file frivolous motions in a case in which he has been disqualified.

12.  Both the First Case and the un-served Second Case, as well as, no doubt, the unserved complaint against Nagel Rice, et al., all reflect the reality that additional financial sanctions or further discipline do not serve as any sort of deterrent to the continuation of Fagan's almost compulsive unethical conduct as long as he retains his law license. Since Fagan is clearly financially and professionally impervious to sanctions, motions are being filed in the First Case, and if necessary in the Second Case, seeking first to permanently enjoin Fagan from filing or prosecuting any action against any lawyer who has crossed Fagan's path, or party or client associated with that lawyer, and Fagan has previously threatened to sue, except in accordance with the procedures and strictures laid-down in the <u>In re Martin-Trigona</u> cases, and progeny. We also seek to condition Fagan's ability to proceed either in any matters in which he may have already filed complaints, such as the First Case, or in any matter which Fagan might be granted leave to proceed, assuming leave is granted under <u>In re Martin-Trigona,</u> upon (A) his payment in full of all outstanding sanctions and fee/cost awards previously imposed by the Southern District, (B) the posting by Fagan for each such action of a bond in then additional amount of \$150,000 -- reflecting more or less an average of the sanctions, fees and costs imposed in <u>Association of Holocaust Victims for Restitution of Artwork, etc.</u> and <u>Kaprun</u>. Since

both of the additional plaintiffs in the Second Case are foreign nationals, they too should be required to post bonds in the event that case is eventually permitted to proceed.

13.   In addition. simply because the Second Case is so clearly duplicative of the First Case previously filed by Fagan, already pending before this Court, an injunction is mandated under the "first-filed" rule and All Writs Act, 28 U.S.C. 1651, restraining Fagan from serving of any complaint in, or further prosecuting the Second Case while the First Case remains pending. It should also bar Fagan from voluntarily dismissing any claims as to the Lowy defendants in the First Case, except with prejudice, and a dismissal with prejudice of the Second Case. The Lowy defendants are also moving to vacate the order to show cause and temporary restraints were issued by the New York Supreme Court before removal of the First Case.

14.   While Fagan retains a law license, only relief such as that being sought by the Lowy defendants can serve as an effective antidote to the continuation of Fagan's unrelenting "pattern of unethical conduct" and his flagrant, unremitting contempt for the judicial process, most lately exemplified by the First and Second Cases, and the recent second recusal motion in Kaprun.

15.   In addition, limited temporary restraints are being sought in order to maintain the status quo until the return date to bar Fagan from either filing any further complaints, or moving to serve the complaint or taking any further actions in the Second Case, or communicating with Mr. Perle's clients, or suing them, for the reasons set forth in the Perle Declaration.

16.   **The Parties, Their Relationships, and the Duplication in the Second Case of Claims Regarding Kaprun in the Previously Removed First Case**. As noted, I began working with Fagan on the Kaprun Cases in 2005, at Fagan's request, after Fagan served my firm as a a non-lawyer "consultant" in another matter. Fagan's own testimony in his dismissed 2007 Florida bankruptcy revealed that since approximately 2001, he had basically supported himself by leveraging the recognition he had gained in the Holocaust-related cases which concluded by 2000-01, to attract high-profile cases. Since then he has filed a series of dramatic, but often  poorly conceived complaints and then attempted to bring in solid lawyers both to do

the actual legal work, and equally critically,  to manipulate them into advancing large amounts of money not only to finance the cases, but also to support Fagan personally by covering both his personal living expenses and his support obligations to his ex-wife and children. He has also survived by inducing "investors" to contribute money to him, ostensibly to support the <u>Kaprun</u> litigation, and other ill-fated Fagan projects. In reality much of that money also went directly to supporting Fagan, who apparently has had almost no actual income since the Holocaust cases were concluded several years ago.

17.  During Fagan's dismissed bankruptcy in Florida, he acknowledged that I had been providing him a place to live, essentially rent-free and covering Fagan's support payments, as well as providing money to support the <u>Kaprun</u> Cases and other matters in which Fagan and I were collaborating. I also later paid the rent on Fagan's "virtual" New York office at 5 Penn Plaza, New York, NY, as well as for the related utilities, services and other overhead. My understanding is that he actually works out of his ex-wife's home in New Jersey. Recently American Express reversed nearly $7,700 in charges on my American Express Card which Fagan had charged to me without authority, including his own personal expenses, such as medicine, cable TV, furniture, etc. (Lowy EX 5 ).

18.  As further developed in the Perle Declaration, the claims in the Second Case with regard to the Lowy defendants, although more generally described, are virtually identical to, and duplicative of the claims asserted in the First Case. The main differences are that the claims in the complaint in Second Case, even more directly than the First Removed Case, represent a frontal assault on the jurisdiction of this Court. But that assault is not limited only to the orders and intentions of Judge Schiendlin in the <u>Kaprun Cases.</u> Instead, their aim is also directed at frustrating the right of the Lowy defendants to effective legal representation in the now-removed First Case by Michael R. Perle, and his firm, Michael R. Perle, PC (collectively "Perle"), our lawyer in the First Case. The complaint suggests, but does not support the notion that some conflict of interest should prevent Mr. Perle's representation of me in the First Case and his

association with me as local counsel in <u>Alkow v. Pearlman</u>, 07 CV 2285 (GBD), and taking positions adverse to Fagan's in that case (Perle EX B, ¶¶ 21, 80-81). In <u>Alkow</u>, Fagan has been seeking to push out me as attorney for the plaintiffs, although I am the lawyer who originated the case, and was retained originally by the clients (Lowy EX 6).

19. The unique theory under which it appears Fagan has named Mr. Perle and his firm as defendants in the Second Case is that Mr. Perle had some sort of unidentified "special relationship" with Fagan, which gave rise in 2006 to a "duty" to Fagan when Perle, serving as the attorney for The Lions Group, Ltd. ("LGL"), and its owner Harvey Grossman, Esq. ("Grossman") who Fagan identifies in the complaint in the Second Case as among his largest creditors and current adversaries. Fagan's theory seems to be that Perle's "duty" was somehow violated in 2006 when Grossman and Perle spurned Fagan's requests for assistance in raising money to support <u>Kaprun</u> and Fagan's personal financial obligations and living expenses, and that "duty" is now being further violated by his representation of me in the First Case and by taking positions adverse to Fagan's interest in <u>Alkow</u>, where Fgan sought to keep me out of the case. While there is a claim made for "malpractice" against Perle, there is no allegation in the complaint, or even a suggestion that Mr. Perle ever had an <u>attorney-client</u> relationship with either Fagan or the other plaintiffs in the the Second Case. Obviously, if Fagan actually believed such a "conflict" existed, his remedy would be  a motion to disqualify Perle, not name him as a defendant in the Second Case -- which substantively differs from the First Case only in also naming Mr. Perle as a defendant.

20. **The Relationship of the "Plaintiffs" in the Second Case to the Actual Plaintiffs in Kaprun**. As noted, I and Mr. Hantman were co-counsel in the <u>Kaprun</u> Cases with Fagan, at the time of his disqualification by Judge Scheindlin. As part of the decision and order disqualifying and sanctioning Fagan, Judge Scheindlin specifically contemplated that I and/or Mr. Hantman, the remaining co-counsel for the foreign plaintiffs, should contact them within the

next 30 days with respect to retaining me and/or Mr. Hantman, so that these plaintiffs would have continuing representation (Perle EX A, 30). In the First Case, Fagan sued both me and Mr. Hantman and our law firms for allegedly interfering with his representation of the <u>Kaprun</u> plaintiffs <u>after</u> his disqualification by allegedly preventing his receipt of mail and faxes, etc.

21.    The un-served Second Case superficially differs from the First Case by positing more generally stated versions of the same claims as in the First Case, but now alleging that my actions have caused injury not just to the interests of Fagan individually, but also to those of the <u>Kaprun Plaintiffs</u> collectively. However, though no actual plaintiffs in the <u>Kaprun</u> cases are among the named "plaintiffs," or even identified by name. Instead Fagan, the disqualified former lawyer for the Kaprun plaintiffs is joined as a "plaintiffs" in this case by "Dr. Gerhard Podovsovnik," an Austrian citizen, and "Bernd Geier," a non-lawyer German citizen, who also were never plaintiffs in <u>Kaprun</u>. Geier's father was a plaintiff in <u>Kaprun</u>. Podovsovnik is identified as an Austrian attorney and "legal representative of and holder of Valid Powers of attorneys for [<u>unidentified</u>] victims and survivors of the Kaprun Disaster" (Perle EX B, ¶¶3-4). But there is no assertion that Podovsovnik is legal guardian (or the equivalent under under Austrian law) for any <u>survivor</u> who actually is a <u>Kaprun</u> plaintiff, or an executor or administrator (or the Austrian equivalent) for the estate of any deceased <u>Kaprun</u> "victim." As Judge Scheindlin noted on September 28, 2007, after receiving what she described as a "confusing letter" from Podovsovnik ( Perle EX G),

> ...I don't really know who he [Podovsovnick] is; he says [he] is counsel for certain German victims and survivors.  He is not counsel in this Court, so he can't represent any of my plaintiffs.

22.    I also am being sued for "malpractice" the Second Case despite the fact I have never had any attorney-client, or fiduciary relationship with Fagan or the "new plaintiffs" in the Second Case, Podovsovnik and Geier, neither of whom were "clients" in <u>Kaprun.</u>

23.    Although Podovsovnik never appeared as a lawyer in the Kaprun cases, the evidence is plain that he has been eager to function as Fagan's surrogate in brazenly defying,

and seeking to circumvent the disqualification order -- in ways not limited to sending letters. Fagan's own actions were previously underscored in the Notice of Removal of the First Case, both as a separate ground for removal under the All Writs Act, 28 U.S.C. §1651(a), and as the basis for urging that the First Case be assigned to Judge Scheindlin as a related to Kaprun Local Civil Rule 1.6.

24.   The actions of Fagan in trying to control Kaprun continued beyond the removal of the First Case to this Court, as noted in Judge Scheindlin's January 3, 2008 order denying recusal. The evidence of Podovsovnick's eagerness to assist Fagan in defying and circumventing the disqualification order is no less plain. Most startlingly, their joint effort included plotting to achieve the removal of Judge Scheindlin from the Kaprun cases  by suing her. This is clearly evidenced in emails exchanged by Fagan and Podovsovnik shortly after Judge Scheindlin noted Podovsovnik's lack of standing on September 28, 2007. On October 2, 2007, Podovsovnik emailed to Fagan the  following message (Lowy EX 3):

its again me:

once again is there a legal possibility to sue the judge and/or the united states of america for mistakes that a judge has committed or is even a Ed Fafan [sic] afraid to sue an US judge and/or the united states.

Gerhard

Fagan soon responded (Lowy EX 4) to assure Podovsovnik that he was

.... not afraid to sue the United States or a US Judge but I have been told that the way to fix it is through the appeal. Over the coming weekend, I will do some research and will give you some cases showing what has happened in the past when a lawyer sued a Judge - any Judge for wrongful acts that were taken during the course of their presiding over a case but which actions are not or should not be protected by the normal immunity which a Judge has automatically by law. I have to believe someone else has filed such a suit. I am not suggesting we do this. I am interested in the answer to the question to see under what circumstances it has been done and what types of acts "are not protected by the Judge's immunity from suit". It is a logical argument that goes hand in hand with the bias and prejudice argument.

25.   Plainly, even before the First Case was filed, the next addition to the Fagan "hit list" being considered by Fagan and Podovsovnik, right after Nagel Rice, et al., was not me or Mr.

and Hantman but rather Judge Scheindlin.

26. The central theme of the claims against me in the Second Case is that in communicating with the Kaprun plaintiffs in the wake of the disqualification order in <u>Kaprun,</u> I defied Fagan's wishes and commands, and thus I interfered with the continuation of Fagan's relationship with the <u>Kaprun</u> plaintiffs. The necessary premise that these people remained his "clients," is by itself contumacious, as Judge Scheindlin's January 3 decision again reflects.

27. **The "Second Case" is Frivolous Because Fagan, Podovsovnik, and Geier Lack Standing to Bring Claims on Behalf of the Kaprun Clients.** It clear neither Fagan, Podovsovnck, nor the third plaintiff, Geier can actually posit a <u>personal</u> basis for <u>standing</u> to bring the claims in the Second Case. Indeed, the putative real party in interest is referred to as "The Kaprun Cases" (no longer extant) or "The Kaprun Appeals" (Perle EX A, ¶¶84, 86-91, 97, 106, 110, 115). This presumably is intended to imply that the unidentified Kaprun plaintiffs collectively, or at least some of them, are the real parties in interest. Geier is identified as just a German citizen, not a lawyer. And like Fagan, and Podovsovnik, he was not a plaintiff in the Kaprun cases. While he professes to hold a "power of attorney for his father," a survivor of the Kaprun fire, there is no assertion Geier himself thus became a "<u>Kaprun</u> client." It is also alleged that he is some sort of "personal representative" for his father, but this surely is meant only in the colloquial sense. There is no allegation Geier's father is incapacitated or that Geier was ever appointed a "personal representative" by a court; e.g., as his father's guardian.

28. All the Second Case complaint reveals as to Podovsovnik is that he is a lawyer in Austria, presumably a lawyer who referred various <u>unidentified</u> parties to Fagan who became clients, and that he has been Fagan's intermediary in dealing with these <u>unidentified</u> former Fagan clients. As noted, Podovsovnik tried to take an interloping role in the <u>Kaprun</u> litigation after Fagan's disqualification – to assist Fagan in perpetuating Fagan's control of the case through <u>ex parte</u> communications to the Court and plotting with Fagan to remove Judge Scheindlin (Lowy EX 3 & 4). Judge Scheindlin rejected Podovsovnik's participation in the case.

29. Thus, despite dissembling references to Podovsovnik and Geier as being a "legal representative" or "personal representative" of Kaprun plaintiffs, the allegations of the complaint in the  Second Case do not in any way demonstrate that either of them, or the disqualified Fagan, actually has any <u>legal</u> standing to assert any "interest" on behalf of the Kaprun plaintiffs. In this respect, the "plaintiffs" in the complaint in the Second Case are very much like the "fictitious" plaintiff in the complaint filed by Fagan in <u>Association of Holocaust Victims for Restitution of Artwork</u> (Perle EX A, 17).

30. The Second Case complaint inadvertently betrays what may actually be Podovsovnik's specific "interest" by referring to the need to protect unspecified "Confidential Information" -- disclosure or publication of which could "adversely affect...Plaintiff Podovsovnik's business....." Obviously, disclosure of his conniving with Fagan to circumvent this Court's orders and jurisdiction could imperil his expectation of a referral fee from Fagan.

31. **The Theory of the Second Case as to The Lowy Defendants.** Before stating any actual "claims" against the Lowy defendants, the complaint in the Second Case sets forth a semi-incoherent litany of criticisms of me regarding alleged failures to support Fagan in the Kaprun Cases, none of which is tied in any way to either the dismissal of the <u>Kaprun</u> cases on <u>forum non conveniens grounds</u> in June 2007, or Fagan's disqualification. However, the most specific charge of Fagan against me in both the First Case and the Second Case is that <u>after Fagan's disqualification</u> in <u>Kaprun</u> I failed to support Fagan in righting a putative injustice to him, although I allegedly "knew or should have known that the disqualification was based on errors of fact and law,..." (Perle EX B, ¶ 44). Similarly, the heart of the claim of the other current "plaintiffs" Podovsovnik and Geier is that <u>after Fagan's disqualification,</u> I "failed or refused to follow the instructions and/or directions of Plaintiff Geier, [and] Plaintiff Podovsovnik...," who were conveying Fagan's "verbal and/or written instructions..." to me (Perle EX B, ¶¶ 45-46).

32. The complaint in the Second Case further alleges that I was "not competent to handle the Kaprun Cases alone," <u>id.</u>, ¶ 48, i.e., after it was dismissed and Fagan was

disqualified. Apparently, the theory is that in the wake of Fagan's disqualification, because I allegedly was "not competent" to "provide meaningful assistance or assume legal responsibility for any aspect of the Kaprun Cases or The Kaprun Appeals," any communications by me to the Kaprun clients, despite being prompted by the Court,  were harmful <u>per se</u> -- because they interfered with the clients' rallying to Fagan (Perle EX B, ¶¶ 49, 54).

33. Obviously, this theory rests entirely on the proposition that Fagan's disqualification was a miscarriage of justice, and accordingly, that the advice Fagan had been providing to his former clients, presumably through Podovsovnik and Geier, should have been followed, and would have been followed, but for my craven submission to Judge Scheindlin. In other words, the basic claim against me in the Second Complaint is that by acting in conformity with Judge Scheindlin's directive in the August 16, 2007 disqualification order, and reaching out to the plaintiffs in order to see if they wished to retain me in the wake of Fagan's disqualification, I acted in derogation of the clients' best interests, as defined by Fagan's wishes and instructions, because according to Fagan I am "incompetent" (Perle EX B, ¶¶ 58, 61, 66).

34.  The second theme of the general allegations in the Second Case is that I allegedly became privy to "from early 2006" to never-identified "Confidential Information," and that after the Kaprun Cases were dismissed, I had allegedly "planned to disclose and/or make public [such information]...related to The Kaprun Cases and The Kaprun Appeals," in order to solicit the clients to retain me (Perle EX B,, ¶¶ 42, 43, 78, 81, 83-95). According to the complaint, this too redounded to the ultimate detriment of the un-named <u>Kaprun</u> clients, as well as Fagan, because not only was I "not competent to represent the clients, [I]...<u>intended</u> to take the clients just to try to settle claims cheaply....without regard to the true value of the case."<u>id.</u>, ¶ 54. However, it is a matter of judicial notice that not a single <u>Kaprun</u> plaintiff ever retained me; I never "took" any <u>Kaprun</u> clients, or settled the case – which remains dismissed, and by letter of November 2, 2007 I advised the court to remove my name from the docket list of counsel in the case (Lowy Exhibit 8). Thus, it is clear from the face of the complaint in the Second Case that

no actual "injury" has occurred, or can ever occur as a result of whatever "plan" I had, or (unsuccessful) efforts I may have allegedly made to enlist <u>Kaprun</u> clients.

35.  The only allegation in the Second Case as to actual, versus "threatened use" of "Confidential Information" cited by Fagan is supposedly identified in a letter to me and Messrs. Perle, Lowy and Hantman of November 16, 2007 (Perle EX H), which references "Exhibits G & H" annexed to the Notice of Removal in the First Case as "confidential information." However, "Exhibit H" to the Notice of Removal is merely the order entered by Judge Scheindlin on October 24, 2007. Plainly, the only putative "confidential information" which Fagan actually identified there, and refers to in the Second Case (¶ 87) are the  emails attached as "Exhibit G" to the Notice of Removal in the First Case revealing Fagan's continuing attempts to control the <u>Kaprun case in the district court</u>. Plainly the only "damage" this "disclosure" caused was to undermine Fagan's ability to keep the First Case out of Federal Court.[2]

36.  "Exhibit G" to the Notice of Removal is the only document actually objected to as "confidential information" in Fagan's November 18, 2007 fax.[3] The emails set forth there are a <u>part</u> of a series of emails which are continued through October 2, 2007, in messages between between Podovsovnik and Fagan (Lowy EX 3 and 4). Those emails collectively show clearly that after his disqualification not only was Fagan still trying to run the case, Podovsovnik was actively engaged in abetting Fagan, to the point of urging Fagan to <u>sue Judge Scheindlin</u>.

37.  The secondary thrust of the new complaint is pre-emptive, supposedly to stop me

---

[2] "Exhibit G" to the Notice of Removal in the First Case was specifically cited as the primary evidence of both the need and basis for removal under the All Writs Acts and of the "relatedness" of the matter in question there to both currently pending <u>Alkow v. Pearlman</u>, 07 CV 2285 (GBD) and <u>In re Kaprun</u> 01 MDL 1428. The need for the case being assigned to Judge Scheindlin, rather than Judge Daniels, was based on Judge Daniels stating on the record in <u>Alkow</u> that he did recognize any injunction issued by the state court as binding

[3] Mr. Perle in response on November 18, 2007 (Perle EX I) pointed out to Fagan that Fagan, a disqualified lawyer, who the emails in question showed was engaged in attempting to circumvent the disqualification order, could not claim any privilege with respect a communication which was evidence of this plan.  It was also noted that  the emails in question had also been copied by Fagan himself  to various non-client/non-lawyer third-parties.

*Fagan v.Lowy, 07Civ10293, Lowy Aff,1/14/08,p.14*

from gaining control over the Kaprun clients by deploying against Fagan the never specified "Confidential Information"(Perle EX B, ¶¶ 42, 43, 78, 81, 83-95). Once again, I have not sought since September to represent any Kaprun plaintiffs, and I have formally advised the court I am no longer in the Kaprun case. Thus, whether or not I previously tried, and whether my "plan" was to "reach a quick settlement at an unreasonably low figure," now is a moot point. Plainly, the only fear Fagan actually has as to that what he deems "Confidential Information" is that there are documents which further reveal the brazen disregard and casual contempt with which he, a lawyer disqualified from further appearing in the case (and Podovsovnik) viewed the Court itself, and orders issued in Kaprun. This obviously has the potential to put his tenuous hold on his license in even further jeopardy.

38.   One may discern as well several other similarly unworthy collateral objectives which the Second Case is intended to serve. The first,  to undo the effect of removal at least insofar as the assignment of the First Case to Judge Scheindlin, was previously accomplished. The further purpose no doubt was to come up with nearly identical, but "non-federal" claims in a second state case  which might resist removal. But the most obvious was the intention to prejudice my defense in the First Case by making my lawyer a party, and also by creating a problem for him in representing Mr. Grossman and LGL, if and when Fagan attempts to join them as additional defendants, as indicated in the complaint in the Second Case (Perle EX B, ¶¶ 21-22, n.2).

39.   There also may be a further, less obvious motivation, seemingly betrayed by the reference in the complaint to "..ongoing Settlement discussions related to entities in Austria...," (Perle EX, ¶ 92): By filing the Second Case, in which both Geier and Podvsovnik as well as Fagan are "plaintiffs," they may hope to divert attention from any moneys they might gain through a "back channel" settlement of Kaprun in Austria, and thus immunize those moneys from any attorney's lien claim by me, or claims by any other U.S. creditors of Fagan.

40.   Parenthetically, I note that not only will a substantive analysis of the allegations in the complaint in the Second Case reveal they are entirely duplicative of those of the First Case

with respect to the Lowy defendants and <u>Kaprun</u>, they incorporate nearly verbatim the submissions offered by Fagan in support of temporary restraints when the <u>First Case</u> was commenced in New York Supreme Court. The first submission was a declaration executed by Podovsovnik" (Perle EX J), in which he identified himself as"an Austrian lawyer [who had]...worked together with Edward D. Fagan" (<u>Id.</u>, ¶ 1). He asserted there, without offering any examples, "... that Mr. Lowy has damaged and continues to threaten damage to our [already dismissed] claims..." (<u>Id.</u>, ¶ 8); that Lowy "has refused to follow instructions from the team [i.e., Fagan] [which has]... caused serious [unidentified] problems for our [dismissed] claims and us [i.e., himself and Fagan]..." (<u>Id.</u>, ¶ 9); that "[f]rom mid-September 2007 [after Fagan's disqualification] to present, Mr. Lowy caused confusion and "made inappropriate and/or disparaging comments about Mr. Fagan...," (<u>Id.</u>, ¶ 15) and that I have

> taken <u>confidential information</u> that was prepared by Mr. Fagan [after his disqualification] and is attempting to negotiate a settlement with defendants and others and he is doing so without authority." [Perle EX J, ¶ 16].

41.  That same assertion from the First Case is the gravamen of the complaint as to me in the <u>Second Case</u> -- that after Fagan's disqualification, without Fagan's consent, I sought to induce Fagan's former clients to retain me, and

> wanted to sever [my]...relationship with Fagan and try to settle The Kaprun Cases and The Kaprun Appeals on [my]... own .[Perle EX B, ¶ 62].

42.  Similarly, Fagan's own declaration in the First Case (Perle EX K) prefigured all of the allegations directed at  me in the complaint in the Second Case. The alleged injury to Fagan and the Kaprun clients, which the First Case purportedly sought to interdict is also exactly the same as the "target" in the Second Case. The only difference between the First Case and the Second Case is that part of the threatened "injury" in the First Case was <u>specifically</u> attributed to the alleged interception of Fagan's mail, faxes, etc., embodying "confidential information" in Kaprun in <u>other</u> cases. e.g., <u>Alkow v. Pearlman</u>,  whereas the cause of the "threatened injury" in the Second Case is alleged to be my supposed readiness to use "confidential information"

gleaned from my involvement more generally  in the Kaprun Cases. The "threatened injury" is exactly the same. Every other assertion in Podovsovnik's October 29 Declaration in the First Case is also echoed in the Second Case complaint.

43.  S**ummary of the "Causes of Action" in the Second Case.** The only other actual difference between the allegations in the complaint in the First Case is that in the First Case, Mr. Hantman, who actually appeared as co-counsel in the Kaprun case, was named as a defendant; in the Second Case, Mr. Perle and his law firm are the additional defendants, based upon the contents of the Notice of Removal of the First Case. Otherwise, the core allegations in both complaints are interchangeable. The "causes of action" in the Second Case are divided into five Counts, all pled with Fagan's characteristic vagueness, pettiness and incoherence:

a. "Count I - Negligence," is asserted in completely conclusory terms, which for no logical reason, attempts to conflate (ii) Mr. Perle's refusal in 2006 "to help with prosecution or nominal funding for Plaintiff Fagan's prosecution of The Kaprun Cases," and (ii) Mr. Perle's alleged "conflict" in representing me because of some mysterious "special relationship with Plaintiff Fagan," or Fgan's ex-wife, with (iii) my putative malfeasance or nonfeasance in Kaprun in 2007 (e.g., showing up late for meetings and depositions, failing to pay court reporters, etc.), and most of all, (iv) my defiance of Fagan in the wake of Fagan's disqualification, by reaching out, to the Kaprun plaintiffs, despite allegedly knowing that "the disqualification was based on errors of fact and law..." (Perle EX B, ¶¶ 44-46). The "claim" is pled so incoherently as to defy meaningful understanding.

b.  "Count II - Breach of Contract or Fiduciary Duty," is pled in completely conclusory terms, which again seem to conflate (ii) Mr. Perle's refusal in November 2006 "to help with prosecution or nominal funding for Plaintiff Fagan's prosecution of The Kaprun Cases," presumably, as some sort of breach of an implied contract in 2006 to provide funding to Fagan, and/or (ii) Mr. Perle's alleged continuing "conflict" in November 2007, because of his undefined "special relationship with Plaintiff Fagan, with (iii) my defiance of Fagan by reaching out to the

Kaprun plaintiffs in September 2007 in the wake of Fagan's disqualification, per Judge Scheindlin's order. Although there are references to "oral, written, or implied contracts," neither the contracts, nor the "fiduciary duties" allegedly violated are identified. This "claim" is also pled so incoherently as to defy meaningful understanding.

      c. "Count III - Malpractice." As noted, there is absolutely no allegation in the complaint that Messrs. Perle or Lowy ever had any sort of attorney-client relationship with any of the "plaintiffs" in the Second Case, i.e., Fagan, Geier or Podovsovnik, which is the sine qua non for any claim for legal malpractice. In addition, Mr. Perle was never a lawyer in the Kaprun. Thus, from the face of the complaint, it is self-evident that neither Mr. Perle nor I could have committed "malpractice" with respect to any of the "plaintiffs" in the Second Case, or even that Mr. Perle could have violated any duty as an attorney "to "The Kaprun Cases or to Plaintiffs."

      d. "Count IV - Injunctive Relief" seeks an injunction against "disclosure and publication" of alleged "Confidential Information." That information is never identified, and its "confidentiality"is never explained. Except for the absence of references to the alleged "interception of voice and electronic data," and the allegation of threatened harm to the Kaprun Cases and Kaprun Appeals, in addition Fagan's business, this "claim" is virtually identical to "Count VI-Injunctive Relief," pled in the complaint in the First Case.

      44. From the face of the complaints in both the First and Second Cases, it is clear that the Kaprun Cases were dismissed in June 2007 because Fagan was unsuccessful in opposing the forum non conveniens motion. The forum problem was inherent in the claims of the foreign plaintiffs since the inception of the case in 2001, years before my involvement began. Thus, it is logically impossible to draw any causal connection between dismissal of the claims and either my alleged (i) pre-dismissal sins of omission (Perle EX B, ¶¶ 35-40), (ii) any alleged post-dismissal disclosure of "Confidential Information" by me, (iii) my defiance of Fagan and solicitation of clients in September 2007, or (iv) my alleged "incompet[ence]... to handle The [previously dismissed] Kaprun Cases alone" (id., ¶¶ 44-46). If Fagan, Geier and/or Podovsovnik,

suffered "monetary and other damages"related to Kaprun it was because of the dismissal of the claims during Fagan's tenure.

45.    **Recent Acts Showing Fagan's Vexatious Intent and Bad Faith.** Any doubt that the Second Case, like the First, was filed in bad faith, for purposes which included harassing and further vexing me, and now interfering with Mr. Perle's ability to represent me in the First Case, as well as interfering with the exercise of jurisdiction by the Southern District in the First Case, is immediately dispelled by the communications and actions of Fagan which preceded, accompanied, and have followed his apparent filing of the Second Case. Alkow v. Pearlman is a case I originated, involving a $250 million fraud. On November 6, 2007, immediately after Fagan learned that Mr. Perle would be both representing mein the First Case, as well as moving my admission pro hac vice,  Fagan  sent an email to me indicating he would take measures to prevent Perle from representing me in the First Case and complaining about Mr. Perle taking positions hostile to his own in Alkow (Lowy EX 5). He also tried unsuccessfully to file a motion under seal in  Alkow  to  prevent my admission pro hac vice (Lowy EX 7).

46.  Even more critically, in addition to seeking to thwart my pro hac admission in order to enhance his own chances of taking over the Alkow case, Fagan undertook within the same time-frame to derail my pending New York bar admission. He attempted this by submitting to the 1st Department Character and Fitness Committee a letter filled with scurrilous and deliberately false accusations of unethical conduct, and by simultaneously filing a frivolous ethics grievance in Florida (Lowy EX 1 and 2).

47.  This was followed on November 7, 2007 by Fagan emailing to "non-combatants" Mr. Grossman, and Mr. Grossman's wife (with copies to me and Mr. Perle) a threat that if it turned out that they, on behalf of LGL, had "consented to, and waived the conflicts ...related to Mr. Perle's representation of Mr. Lowy and Mr. Hantman... ," Fgan would "take any steps that I deem necessary to deal with this situation..."(Perle EX L). On November 9, 2007, Fagan sent an

email to Messrs. Perle and Grossman warning Perle that Fagan intended to sue Perle for "accept[ing] Lowy's request to appear in the Alkow case [Alkow v. Pearlman, 07CV2285 (GBD)]...," and was

> ...putting you [Perle?], Grossman and LGL on notice that, to the extent Grossman and LGL believe that – prior to Nov 6, 2007 – Grossman and LGL believe they have any valid claims or liens or security interest against my revenues and/or future fees, I now have further objections to any such claims.

48.    In a fax of November 9, 2007 from Fagan to Mr. Perle, with copies to Mr. Grossman, me, and, mysteriously, to Fagan's ex-wife, Fagan implied that for some unexplained reason Mr. Perle also had a conflict with Fagan's ex-wife (Perle EX M). I understand that thereafter, Fagan also transmitted other similar emails and faxes to Messrs. Perle and Grossman, all either threatening Mr. Grossman and LGL directly, or implying that unless Mr. Perle withdrew from representing me, both Mr. Perle and LGL would be sued by Fagan, and he would challenge LGL's first lien position on Kaprun.

49.    Notably, before attempting to serve me or Mr. Perle with the complaint in the Second case, or even providing us with "courtesy copies" of the complaint, Fagan faxed a "courtesy copy" to Mr. Perle's clients, Mr. Grossman and LGL on December 14, 2007, with the following message (Perle EX N):

> I urge you [Mr. Grossman] to consult with Mr. Perle and demand that he stop interfering in the Kaprun Cases, and my representation of people in the Transcontinental cases [Alkow v. Pearlman, i.e., by appearing as Lowy's local counsel to move Lowy's admission pro hac vice] and my business in general.

50.    Even more pointedly revealing Fagan's malice and irresponsibility, he later the same day faxed "courtesy copies" to me,  my partner, and Mr. Perle, with the gratuitous message, "Please advise who will be representing you on these claims."

51.    Fagan's actions accompanying the transmission of "courtesy copies" of the complaint in the Second Case" make crystal clear  that his only  purposes in  filing the complaint

in the Second Case were to intimidate Mr. Perle, and hopefully to cause cleavage both in his relationship with me, and Mr. Perle relationship with Grossman/LGL, or to cause Grossman and LGL to pressure him into withdrawing from representing me.

JAMES F. LOWY

SWORN AND SUBSCRIBED BEFORE
ME THIS _18ᵗʰ_ DAY OF JANUARY, 2008    *And who is personally known to me.*

EDWARD C. ROYER
MY COMMISSION #DD585296
EXPIRES: AUG 15, 2010
Bonded through 1st State Insuranc⟶

**EXHIBIT 1**

# The Florida Bar
## Inquiry/Complaint Form

**PART ONE:** (Read instructions on reverse side.)

| | |
|---|---|
| Your Name: Edward D. Fagan | Attorney's Name: James F. Lowy Frederick T. Lowe operating as International Law Groups and |
| Address: 5 Penn Plaza 23rd Floor | Address: Florida Law Group, 3909 Henderson Bl 2nd fl |
| City: New York   State: NY | City: Tampa   State: FL |
| Phone: (646) 375-   Zip Code: 10001 | Phone: (813) 288-9525 Zip Code: 33629 |
| ACAP Reference No. | |

**PART TWO:** The specific thing or things I am complaining about are:

Contingent Fee Agreement Violations;

Client neglect;

Improper Use / Accounting for Monies to be used for fees/expenses;

Theft of services; and

other allegations explained in attached Memo.

This report has to do with attorneys representing innocent victims of the Pearlman Trans Continental Fraud.

**PART THREE:** The witnesses in support of my allegations are: [see attached sheet].

See attached captions. Each Named Plaintiff is a witness. Addresses and Phone #'s will be provided.

**PART FOUR:** *Under penalty of perjury, I declare the foregoing facts are true, correct and complete.*

Nov. 2, 2007                         Edward D. Fagan

— Exhibit 2 —

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES - Page 1

This complaint relates to the conduct of certain Florida attorneys to whom
victims of a fraud turned to represent them and to protect their interests.
The victims are victims (hereinafter "Transcon victims") of what has been
reported as the greatest fraud or Ponzi scheme in Florida history – the
Transcontinental Stock and Employee Investment Savings Account fraud
case.   *Copies of newspaper articles submitted separately as Exhibit 1.*

The lawyers and firms are:

*James F. Lowy Esq. ("Lowy")*
*International Law Group LLC ("ILG")*
*who in turn brought in*
*Frederick T. Lowe Esq. ("Lowe")*
*and Lowy's other firm entitled*
*Florida Law Group LLC ("FLG") in which Lowy and Lowe are involved.*

Lowy, Lowe, ILG and FLG (hereinafter "The Florida Lawyers") solicited
and entered into Retainer Contracts with persons in Florida, New York,
Maryland, Georgia, California, New Jersey, Connecticut, Colorado and other
states outside of Florida and for cases The Florida Lawyers claimed The
Florida Lawyers were going to prosecute in Florida and New York.

I am a New York lawyer who The Florida Lawyers asked and hired to help
with regard to a potential New York case. I was also asked to provide The
'lorida Lawyers with procedure and back-up legal work to help them
alyze the claims and how to decide how to proceed with the litigation.

not now, nor have I ever been, practicing law in Florida. I am not
'ed to practice law in Florida.   I am counsel of record in a matter
t Alkow et al v Pearlman et al 07-cv-2285 (GBD) that is pending in
them District of New York

ent that I have any Retainer Agreements, I am filing them with the
Office of Court Administration in NY as is required under the
will also file appropriate documents with the New York Office
ninistration with regard to other named plaintiffs for whom I
n Retainer Agreements.

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES - Page 2

As explained below, The Florida lawyers refused to provide me with the
necessary written agreements as I believe is required by the Florida
Statement of Clients Rights in Contingent Fee cases. Originally, I believed I
was working on the cases in NY under valid Retainer Agreements and/or
contracts that complied with Florida and NY law. However, I no longer
believe I am.

And of the importance of this case I do not want innocent clients to suffer
the consequences of the improprieties by The Florida Lawyers in whose
names the Retainers are held.

This complaint is also necessary because The Florida lawyers have refused
to do legal work for the clients, The Florida Lawyers allowed a case to be
dismissed for want of prosecution, The Florida Lawyers are potentially
engaging in the unauthorized practice of law in New York by holding
themselves out as having their own New York law offices, The Florida
Lawyers have refused to pay fees, The Florida Lawyers have refused to pay
the expenses and costs necessary to properly prosecute the litigation in New
York and The Florida Lawyers are attempting to evade obligations to
Retained clients by pushing work off on me and my team.

As explained below, I have read the Florida State regarding Contingent Fee
Agreements Rule 4.1-5 and the NY rules regarding Contingent Fee
agreements and I believe there are serious problems here as to which the NY
Bar and the Florida Bar must be aware.

### Background

Almost immediately after the fraud occurred, The Florida Lawyers made a
deal with one of the sales agents involved in the fraud, who was a "friend,
client and tenant" obtained a "client list" or contact information for potential
victims and started to solicit clients.  *See Exhibit 2 – Feb. 3, 2007 Email
Lowy to German Lawyer.*

One of The Florida Lawyers held himself out to be the only person who was
fighting for rights of victims of this fraud. He aggressively solicited clients
by telephone, mail and email. *See Exhibit 3 – Feb. 3, 2007 Email Soliciting
Clients.*

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES - Page 3

The Florida Lawyers created and used at least four different versions of
Retainer Contracts. *See Exhibit 4, 5, 6 & 7.*

The Retainers from February 2007 were different than the Retainers in
March 2007 and different from the ones in April 2007 and I assume The
Florida Lawyers are different from the ones that came later.

The differences are not the Continent Fee percentages at the successful
conclusion of the case or other "fees" The Florida Lawyers charge.

Some retainers are taken in the name of James Lowy and Florida Law
Group.

Other retainers are taken in the name of James Lowy and International Law
Group.

Other retainers are taken on the letterhead of one of the two firms but in the
body of the agreement, the firm supposedly representing clients is the other
law firm.

Florida Law Group and Fred Lowe repeatedly disavow any responsibility for
representing clients.

It appears that once The Florida Lawyers realized how expensive the case
was going to be, they started to switch retainers and/or obligations from one
firm (that has 3 lawyers and ability to fund the case) to another firm (which
has 1 lawyer and is trying to claim limited resources to fund the case).

In some retainers The Florida Lawyers purported to charge a flat fee with no
contingent fee.

In some retainers clients are told that The Florida Lawyers will not be
charged additional cash fees but reserve the right to increase contingent fees.

In other retainers clients are told that The Florida Lawyers reserve the right
to charge additional cash fees or charge a higher contingent fee.

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC  RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES - Page 4

In all retainers clients are obligated to pay costs of the litigation however it is not clear what those costs are going to be.

In some retainers clients are told that The Florida Lawyers will file suit in Hillsborough or Pinellas County.

In other retainers clients are told the claims will be filed in Florida and NY.

In other retainers The Florida Lawyers fail to disclose who the other lawyers are with whom they are supposedly working.

In all retainers, The Florida Lawyers violate Article 4 of the Statement of Clients Rights for Contingency Fee cases.

In all retainers, The Florida Lawyers violate Article 5 of the Statement of Clients Rights for Contingency Fee cases.

Since the execution of the Retainers, The Florida Lawyer failed to provide the written documents disclosing who was doing what, what was being done, what the agreements were with lawyers outside the firm, how much those lawyers were to be paid, failed to provide accounting of what was done with their upfront fees The Florida Lawyers paid and how much of that money remained.

The Florida Lawyers induced vulnerable clients to pay them upfront fees in cases for which The Florida Lawyers were not competent or had no intention of prosecuting.

The Florida Lawyers failed to inform these vulnerable clients – before they took their money – that The Florida Lawyer(s) and/or their firms and/or colleagues or other clients were fact witnesses and could be precluded from acting as counsel in the case.

The Florida Lawyers failed to inform these vulnerable clients – before they took their money – that they had multiple conflicts of interest between clients in the same lawsuits;

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC  RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES – Page 5

The Florida Lawyers entered into contracts to provide legal services outside
the State of Florida and in jurisdictions where The Florida Lawyers were not
permitted to practice and without the proper contracts and disclosures.

During the course of the representation, The Florida Lawyers sought to
protect one set of clients to the detriment of another set of clients.

The Florida Lawyers brought other lawyers not associated with their firms
into the cases, failed to provide necessary written contract and then sought to
abandon the claims and the clients.

On March 2, 2007 – The Florida Lawyers filed a case in the Middle District
of Florida entitled Clements et al v. Pearlman et al 8:07-cv-399-RAL-TGW .
See Exhibit 8 – Docket Sheet.

On March 15, 2007 – I filed a case in the Southern District of New York
entitled Alkow et al v. Pearlman et al 07-cv-2285 (GBD).  See Exhibit 9 – 1st
Page of Docket Sheet.

The Florida Lawyers did nothing in the Florida litigation. They did not
serve defendants and they took no action whatsoever. Eventually the case
was dismissed for lack of prosecution. See Exhibit 8.

I have actively and aggressively litigated the NY case since March 2007 –
See Exhibit 9 – Last Reference in Docket Sheet showing 86 filings including
Motions to Dismiss, Motions for Discovery, 3 hearings and weekly activity.

Pursuant to their Retainers, The Florida Lawyers have the obligations to
fund the litigation in NY, Florida or anywhere else.

The Florida Lawyers have failed to fund the litigation and the Clients claims
are now in jeopardy.

I tried to get the Florida attorneys to recognize and honor their obligations,
The Florida Lawyers refused.

SUMMARY OF COMPLAINT ABOUT JAMES F. LOWY – FBN 0081434 ,
FREDERICK T. LOWE – FBN 0527505, OPERATING UNDER NAMES FLORIDA
LAW GROUP LLC and INTERNATIONAL LAW GROUP LLC  RELATED TO
CONTINGENT FEE RETAINER AGREEMENTS IN
TRANSCONTINENTAL / PEARLMAN FRAUD CASES - Page 6

I tried to get the Florida attorneys to provide the necessary documents to
memorialize the agreements for fees, services, and reimbursement of
expenses so the claims could go forward, The Florida Lawyers have refused.
From March until October 2007 among other things, the Florida lawyers:

- Potentially violated trust funds by way of charging non-refundable
  retainer fees and then doing no work;
- Have failed to respond to client phone calls and messages;
- Client claims were ignored;
- Client files and documents were lost or misplaced;
- Evidence from important witnesses was withheld;
- Clients were put into claims with persons against whom The Florida
  Lawyers had conflicts; and
- Requests for necessary legal work, documents and support were
  ignored.

Misrepresentations were made by The Florida Lawyers to Retained clients
about things The Florida Lawyers did or were supposed to have been doing.

Because of problems that The Florida Lawyers caused, I was compelled to
file a Motion with the New York Court to explain what they have done in
violation of their duties to clients. *See Exhibit 10 - a copy of Motion.*

I am compelled to notify the Bar because I believe innocent victims claims
are being jeopardized.  I am also notifying the Bar because I do not want
their to be any suggestion that I was in any way a part of these horrible acts
by The Florida Lawyers.

All the plaintiffs are potential witnesses and their names, addresses and
contact information can be provided.

Should the Bar wish any further information, they can contact me;

Edward D. Fagan
Five Penn Plaza, 23rd Floor
New York,  NY  10001
Tel. (646) 378-2225 / Fax (646) 417-5558)
Email: ed.fagan@global-litigation-partners.com

## POTENTIAL WITNESSES:

All Named Plaintiffs in Florida and New York Complaints.

Representative Witnesses who can provide background about what has gone on with The Florida Lawyers that led to this complaint are Michael Connelly (defrauded out of $ 1 million) and Dr. Kathleen Clements (defrauded out of $500,000)

Gmail Calendar Documents Photos Groups Web more ▼          jameslowy@gmail.com | Settings | Older version | Help | Sign out

Search Mail    Search the Web    Show search options / Create a filter

**Compose Mail**

Criminal Law Attorney - www.Superpages.com - Find Tampa Area Criminal Law Attorneys & Legal Consultation    Sponsored Link ◀ ▶

◀ Back to Inbox   Archive   Report Spam   Delete   More Actions    ‹ Newer 2 of 1834 Older ›

**Inbox (70)**

### Re: Alkow v. Pearlman 07-CV-2285 (GBD) (KNF) Inbox

**Starred**

Edward D. Fagan to James, me, Michae  show details 12:20 PM (3 hours ago)    Reply

Jim & Michael:

**Chats**

#1 - Please be advised that Michael's Motion to Admit Jim has been rejected and has to be re-filed manually. I suggest you do that immediately and properly so that Judge Daniels can address the issue.

**Sent Mail**

#2 - I am informed of the latest email to clients. I am not going to bother sending a lengthy reply. The reply is just this - what you are saying to people is suspect. Here is why - Your stories keep changing about Britt Murphy and they keep changing in a material way that underscores the problems I have pointed out to both of you, to clients and to the Court. With this email I am providing copies of your own emails related to Britt Murphy from Feb. 3, 2007; Feb. 6, 2007 and Nov. 16, 2007. Your statements about him not being your client and his involvement and your relationship with him are belied by your own emails. Clients can decide for themselves what to believe based on things you have written to them, said to them and done for them. Again, I demand the production of all the Murphy materials as per my prior emails.

**Drafts**

**All Mail**

**Spam (9)**

#3 - Again, I beg you to stop sending inflammatory and disparaging emails about me. I caution you to stop making false statements about me. And, I urge you to honor the terms of the Restraining Order that prohibits disparaging comments and/or false statements such as those you have made. The issues between you and me will be decided by the Courts.

**Trash**

Ed Fagan

**Contacts**

PS  As with other emails, I am providing a copy of this to the clients so they are fully informed of everything that is going on in relation to their cases or the agreements between you ("Jim"), me and the clients.

**Chat**

Search, add, or invite

James Lowy

Set status here ▼



Chat with your friends
Invite them to Gmail

Helen Huntley
Heather Huntley
James Lee VanF...
kathy lowy
Applebaum, Harvey
Edward D. Fagan
faganlawintl@aim...
frediowe
Michael R Pbrle
MICHAEL S CON...

Options ▼  Add Contact

Edward D. Fagan Esq.

5 Penn Plaza, 23rd Floor, New York, NY 10001

Tel. (646) 378-2225 & Fax (646) 417-5558

Email: ed.fagan@global-litigation-partners.com

**Labels**

Edit labels

Lowy's Misrepresentations about Murphy.pdf
471K  View as HTML  Download

Reply   Reply to all   Forward

Edward D. Fagan to James, me, Michael, LI: show details 1:08 PM (3 hours ago)    Reply

Jim & Mike:

Please stop suggesting to clients that you can construe their choice of having me serve as their local counsel in some way violates the terms of your Retainer Agreement with them. No client to my knowledge has or intends to relieve you of your obligations to them or the cases pursuant to the original Retainer Agreements. In any event, that is an issue before the Courts.

Invite a friend
Give Gmail to:

I will provide you with the updated list of all people on whose behalf I will move forward - and as

**Sponsored Links**

Tampa Attorney
Workers Comp & Social Security Cases. Call for Free Consultation!
RoothLawyer.com

Florida Lawyers
No Matter The Case, We Can Handle It. Call Us for Legal Services.
www.HdaLaw.com

Daytona Business Lawyers
Quality Help For Businesses And Professionals. Call Us Today!
www.SnellLegal.com

Tampa Area Attorneys
We Handle Criminal, Family & Injury Legal Cases. Free Consultations.
rp.com/AllenAndEchemendia

Our Clients Need Lawyers
Get Legal Cases Emailed Regularly. Call Now To Qualify: 866-886-5342.
www.LegalMatch.com/Attorneys

Law Firm
Immigration Law Can Be A Sensitive Matter. Call Today For Work Visas.
rameauodarislaw.com

Accident Law Firm
Free Consultation by a Local Injury Lawyer in Accident cases.
www.InjuryHelpLineAttorney.com

DC Baltimore Law Firm
Contact Our Attorneys for Legal Representation Today. Call Us Now.
LawOfficesOfJamesJFarley.com

More about...
Military Attorney »
Military Lawyer »
Civil Law Attorney »
Contract Attorney »

About these links

New window
Print all
Collapse all
Forward all

Send invite    50 to 8
preview invite

to those people you should not attempt to declare your obligations to them pursuant to YOUR
Retainer Agreement as being voided or terminated by the Clients.

Since Michael Perle told you and me 2 hours ago in our conference call that he has not even read
the proposed Retainer Agreement, I suggest that you simply let people tell you that they do not
want me to serve as their local counsel. Before they do that it would be prudent to fully
disclose to them what Michael's plans are for the case, if he intends to stay in the case or if you
are just planning to use Michael to delay the case until you can get some other local counsel in.
For the record, I will have the draft of the proposed Order related to how the cases would be
severed so that the group for which I am responsible can move forward expeditiously even the
group for which you two may be responsible will move forward at any pace you choose and the
Court permits.  I will have it to you by Monday Nov. 19th at 9 am and I will expect your proposed
revisions to that by Wednesday at 5 pm.

Ed


Edward D. Fagan Esq.

5 Penn Plaza, 23rd Floor, New York, NY 10001

Tel. (646) 378-2225 & Fax (646) 417-5958

Email: ed.fagan@global-litigation-partners.com


- Show quoted text -

- Show quoted text -
<Lowy's Misrepresentations about Murphy.pdf>


Edward O. Fagan Esq.

6 Penn Plaza, 23rd Floor, New York, NY 10001

Tel. (646) 378-2225 & Fax (646) 417-5958

Email: ed.fagan@global-litigation-partners.com


Reply     Reply to all     Forward


« Back to Inbox   [ Archive ]   [ Report Spam ]   [ Delete ]   [ More Actions ]                    ‹ Newer 2 of 1834 Older ›

## James F.Lowy

**From:**   Edward D. Fagan [Ed.Fagan@global-litigation-partners.com]

**Sent:**   Friday, November 16, 2007 12:20 PM

**To:**   James Lowy; James Lowy; Michael R Perle

**Cc:**   LIZZIE; PRIVATE DETECTIVE. KEN TORRES

**Subject:** Re: Alkow v. Pearlman 07-CV-2285 (GBD) (KNF)

Jim & Michael:

# 1 - Please be advised that Michael's Motion to Admit Jim has been rejected and has to be re-filed manually. ☐ I suggest you do that immediately and properly so that Judge Daniels can address the issue.

# 2 - I am informed of the latest email to clients. ☐ I am not going to bother sending a lengthy reply. ☐ ☐ The reply is just this - what you are saying to people is suspect. ☐ ☐ Here is why - Your stories keep changing about Britt Murphy and they keep changing in a material way that underscores the problems I have pointed out to both of you, to clients and to the Court. ☐ With this email I am providing copies of your own emails related to Britt Murphy from Feb. 3, 2007; Feb. 6, 2007 and today Nov. 16, 2007. ☐ ☐ ☐ Your statements about him not being your client and his involvement and your relationship with him are belied by your own emails. ☐ ☐ Clients can decide for themselves what to believe based on things you have written to them, said to them and done for them. ☐ Again, I demand the production of all the Murphy materials as per my prior emails. ☐ ☐

# 3 - Again, I beg you to stop sending inflammatory and disparaging emails about me. ☐ ☐ I caution you to stop making false statements about me. ☐ ☐ And, I urge you to honor the terms of the Restraining Order that prohibits disparaging comments and/or false statements such as those you have made. ☐ The issues between you and me will be decided by the Courts.

Ed Fagan

PS☐ As with other emails, I am providing a copy of this to the clients so they are fully informed of everything that is going on in relation to their cases or the agreements between, you ("Jim"), me and the clients.

-----Original Message-----
From: James F. Lowy <jameslowy@floridalawgroup.com>
To:
Cc:
Sent: Sat, 3 Feb 2007 10:32 am
Subject: Bogus Trans Continental Savings Plan, German Connection



URGENT.

I and 1,000 other are stuck in bogus, fraudulent private savings account program generating multi-million dollars of losses.

Personal/family losses could exceed 1 million dollars.

ME and Florida Law Group is being retained to represent all the cheated investors deriving from one sales agent, who is a friend, client and tenant. He is not responsible, his family lost hundreds of thousands also. So we go after the principals, not the outside agent, and get cooperation from the agent.

2/3/07
Lowy's
Statement
Murphy
Not
Responsible

— Exhibit 1



From: ▮
Subject: FW: Lowy's RETAINER - Case against Trans Continental and affiliates
Date: October 22, 2007 8:25:35 PM EDT
To: "Edward D. Fagan" <Ed.Fagan@global-litigation-partners.com>
Cc: ▮

*10/22/07
Email From
Client with
Lowy Email
— it was most

Hello Ed.

First, thank you for the time you spent last night on the phone with ▮ — it was most appreciated.

1. ▮

2. Regarding Britt Murphy - ▮ ▮ when I told Britt I received periodic assurances from Britt Murphy that all was ok. Then ▮ that Fiserv said they were experiencing delays in receiving the requested minimum required distribution for 2006. Britt said it was due to pile up of paperwork and that they had hired people to clear the backlog up. Later Britt also told us that Tallahassee OFR audits passed with flying colors and there was celebration at the TCA office. This indicates the string of untruths that we got during the last quarter of 2006.

* Lowy's statement
Next Page
Don't sue
Murphy
2/6/07

From: James F.Lowy [mailto:jameslowy@floridalawgroup.com]
Sent: Tuesday, February, 06, 2007 5:52 PM
To: ▮
Subject: RETAINER - Case against Trans Continental and affiliates

From: James F.Lowy [mailto:jameslowy@floridalawgroup.com]
Sent: Tuesday, February 06, 2007 1:25 AM
To: jameslowy@floridalawgroup.com;
Cc: FredLowe@floridalawgroup.com;
Subject: RE: Case against Trans Continental and affiliates

Dear All,

Attached please find the proposed retainer agreement for this matter,

I am going to adhere to the following format with regard to fees and costs:

— Exhibit 2 —

Oh, one more thing. THIS IS IMPORTANT.

We may have a claim against Southeastern Financial Services. Southeastern may have been negligent in this process. You probably think that they were negligent. Whether or not Southeastern was negligent, personally, i think suing Southeastern is a waste of time, and we are better off getting help from Britt Murphy than going after him. When you realize the degree and intricacy of the fraud involved, you will probably agree with me. Southeastern would have had to audit Trans Con the way Florida just did in order to discover the all the fraud and embezzlement here. Britt was shown positive review letters from the State, bogus insurance policies from AIG, bogus FDIC assurances, bogus D and B reports, and bogus accounting and audits. It looks like major and regional banks were taken for a ride by the same group of criminals. If they can fool Bank of America for $43 million, is Southeastern likely negligent ? And...does it matter now ?



-----Original Message-----
From: James Lowy [mailto:jameslowy@gmail.com]
Sent: Friday, November 16, 2007 9:22 AM
To:

*11/16/07*
*Lowy's*
*Statement*

*Murphy's*
*Negligent*
*and*

*I will*
*consider*
*suing*
*Murphy*

Dear All,

Please find attached an updated retainer agreement and statement of
clients rights.
The agreement includes Michael Perle, and Michael Perle will sign it.

If you plan to continue to retain me to litigate these matters, I
request that you sign the attached documents and fax, mail or scan and
PDF back to me at jameslowy@floridalawgroup.com or jameslowy@gmail.com
or fax: 813-262-0384, or sign and mail to: International Law Group, 3907
Henderson Blvd.
#200 Tampa, FL 33629-5761.
If you have any questions whatsoever, I am available at the office
813-288-9525, or via cell phone, 813 760 2901.
I will be out of town all of next week.

*Exhibit*
*3*



Britt Murphy's negligence cost my family hundreds of thousands of dollars.

I am interested in seeking a recovery against Britt Murphy, and the other sales agents.

I think such a case ought to be considered.

However, another multi-party case such as that is more than I can personally take on at the moment.

I have stated that I would try to find another lawyer to assist with such an effort, and there are plaintiffs in this group who are suing sales agents, and perhaps those plaintiffs will share information with all of us regarding the progress of any lawsuits against sales agents.

Since I have represented Britt Murphy in the past, with regard to other unrelated matters, I cannot be retained to sue Britt Murphy.

However, I can sue Britt Murphy as a Plaintiff, and I would not hesitate to do so. I AM NOT BRITT MURPHYS LAWYER and any such representation is a misrepresentation.

**EXHIBIT 2**

OFFICE OF COMMITTEE ON CHARACTER & FITNESS
SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION · FIRST DEPARTMENT
41 MADISON AVENUE, 26TH FLOOR
NEW YORK, N.Y. 10010
212-779-1779
FAX 212-779-1889

November 13, 2007

James Franklin Lowy, Esq.
% Michael R. Perle, Esq.
1265 Paterson Plank Road
Secaucus, New Jersey 07094

Re: Applicant James Franklin Lowy
    Response to Submission of Edward D. Fagan, Esq.

Dear Mr. Lowy:

On November 9, 2007, this Committee received the enclosed letter from Edward D. Fagan, Esq., dated November 2, 2007, which requires a full response and may result in the postponement of your hearing scheduled before a Subcommittee on December 18, 2007.

As Mr. Fagan's letter and its attachments implicate possible misconduct on your part, including the unauthorized practice of law in New York, neglect of client matters, conflicts of interest, and various improprieties relative to Retainer Agreements, we will require a full written response to the allegations of misconduct presented therein.

Additionally, provide a statement as to the status of the related disciplinary complaint filed against you by Mr. Fagan in the State of Florida [as referenced in his November 2, 2007 letter]. Provide copies of any and all submissions made by you to the Florida Disciplinary Authorities in response to that disciplinary complaint.

Mr. Fagan's letter also attaches your November 2, 2007 Affidavit seeking Pro Hac Vice admission in litigation pending in the Southern District of New York [Alkow et al. v. Pearlman et al. 07-2285 (GBD)]. Please advise as to the outcome of that application.

Please provide the above information and documentation no later than December 3, 2007.

Page 1 of 2

By letter of November 7, 2007 to you and the three
Subcommittee Members referenced below, your hearing was scheduled
before that Subcommittee for December 18, 2007. Please be advised
that failure to make a timely response by December 3, 2007 may
result in the postponement of the Subcommittee hearing.

Very truly yours,

James T. Shed
Executive Secretary

encl.

cc:   Subcommittee Members, w/o encl.:
      Hon. Norman Goodman
      Thomas C. Moore, Esq.
      Nancy A. Rucker, Esq.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

BEVERLY ALKOW, et al

    Plaintiffs,

v,

                            **CASE #: 07-2285 (GBD)**

LOUIS J. PEARLMAN, et al.,

    Defendants.

## AFFIDAVIT OF JAMES F. LOWY IN SUPPORT OF ADMISSION AS COUNSEL *PRO HAC VICE*

I, James F. Lowy, do say and declare:

1. I am a member of International Law Group, Tampa Florida, and am counsel or co-counsel for Plaintiffs in the above-captioned action.

2. I am presently a member in good standing of the Florida Bar (1996) and the United States District Court for the Middle District of Florida (2000). I have been working full-time as a litigator in state and federal civil and criminal and bankruptcy courts since 1999.

3. I have passed the NY Bar Exam and am an applicant for admission to the NY Bar. 

4. I am familiar with federal practice and the federal rules of civil procedure.

5. All Plaintiffs in these proceedings have signed retainer agreements with me. 

## — *Exhibit 1* —

6. Mr. Fagan previously orally moved for my admission *pro hac vice*, but has failed to submit the necessary paperwork to get me admitted.

7. Therefore, I respectfully submit my own proposed order on admission *pro hac vice*.

8. There are no pending disciplinary proceedings against me in any state or federal court.

   WHEREFORE it is respectfully requested that the motion to admit James F.

Lowy, *pro hac vice*, to represent Plaintiffs in the above-captioned matter, be granted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Tampa, Florida on November 2, 2007.

   Respectfully Submitted,

   INTERNATIONAL LAW GROUP, LLC

   James F. Lowy, Esq.
   4907 Henderson Blvd. #200
   Tampa, Florida 33629-5761
   813-288-9525 TEL.
   813-282-0384 FAX.
   Counsel for Plaintiffs

   New York Annex Office

   James F. Lowy Esq., P.A.
   5 Penn Plaza, 23rd FL
   NY, NY 10001

Cc: All Counsel of Record

**EXHIBIT 3**

On Oct 2, 2007, at 4:59 AM, Dr.Gerhard Podovsovnik wrote:

ed

its again me:

once again is there a legal possibility to sue the judge and/or the united states of america for mistakes that a judge has comitted or is even a Ed Fafan afraid to sue an US judge and/or the united states.

gerhard
Mag.Dr.Gerhard Podovsovnik
Rechtsanwalt

Am Heumarkt 3/16
1030 Wien
Tel: +43 1 7180420
Fax: +43 1 718042020
Mail:office@podovsovnik.com

-----Original Message-----
From: Edward D. Fagan <Ed.Fagan@global-litigation-partners.com>

Date: Mon, 1 Oct 2007 21:38:46
To:info@greiter.lawfirm.at,"RA Dr. Herwig Hasslacher" <kanzlei@hh-law.at>,office@hinterwirth-neureiter.at,Ochanomizu Law and Patent Office <kigawa@kc4.so-net.ne.jp>,Gerhard Podovsovnik <Dr.Gerhard@podovsovnik.com>,Sekretariat <Sekretariat@podovsovnik.com>,u_g.schwab@aon.at,Schuberth <a.schuberth@ra-zell.at>
Cc:James Lowy <jameslowy@gmail.com>,James Lowy <jameslowy@floridalawgroup.com>,Robert J Hantman <Hantmanrj@aol.com>,Margarete Endl <margaretendl@yahoo.com>,"Dr. Bernd Geier" <b.geier@bernd-geier-partner.de>,Bart Veldhuisen <bart.veldhuisen@planet.nl>,elizfagan424@aol.com,KenTorSearch@aol.com
Subject: Re: Kaprun - URGENT

Dear All:

Here is a copy of the email I sent to Jim Lowy hours ago. I have yet to receive confirmation that Jim has sent the letter he promised to send to Judge Scheindlin.

**EXHIBIT 4**

From: James F.Lowy [jameslowy@floridalawgroup.com]
Sent: Monday, November 05, 2007 7:14 PM
To: m.perle@earthlink.net
Subject: FW: AW: Re: Kaprun - URGENT

---------------------------------------------------------------------------------

From: Edward D. Fagan [mailto:Ed.Fagan@global-litigation-partners.com]
Sent: Tuesday, October 02, 2007 7:54 AM
To: office@podovsovnik.com
Cc: Schuberth; u_g.schwab@aon.at; Sekretariat; Gerhard Podovsovnik; Ochanomizu Law and Patent
Office; office@hinterwirth-neureiter.at; RA Dr. Herwig Hasslacher; info@greiter.lawfirm.at;
KenTorSearch@aol.com; elizfagan424@aol.com; Bart Veldhuisen; Dr. Bernd Geier; Margarete Endl;
Robert J Hantman; James Lowy; James Lowy
Subject: Re: AW: Re: Kaprun - URGENT


Ok Gerhard:


Here is your last response.


Ed Fagan is not afraid to sue the United States or a US Judge but I have been told that the way to fix it is
through the appeal. Over the coming weekend, I will do some research and will give you some cases
showing what has happened in the past when a lawyer sued a Judge - any Judge for wrongful acts that
were taken during the course of their presiding over a case but which actions are not or should not be
protected by the normal immunity which a Judge has automatically by law. I have to believe someone else
has filed such a suit. I am not suggesting we do this. I am interested in the answer to the question to see
under what circumstances it has been done and what types of acts "are not protected by the Judge's
immunity from suit". It is a logical argument that goes hand in hand with the bias and prejudice argument.


Please note that tomorrow I have an Oral Argument in another case and I must prepare all day today for it
and it will not be over until late in the day tomorrow. This may affect my ability to quickly respond to emails.


So, if any of you need a quick response from me, please call me on my US Cell Phone +1-917-239-4989.


Ed

GLOBAL LITIGATION PARTNERS

5 Penn Plaza, 23rd Floor, New York, NY 10001

Tel. (646) 378-2225 & Fax (646) 417-5558

Email: ed.fagan@global-litigation-partners.com

**EXHIBIT 5**



American Express
Fraud Operations
P.O. Box 981541
El Paso, TX 79998



January 07, 2008

James F Lowy
PO Box 10614
Tampa, FL 33679-0614

ΙιΙΙιιΙΙ.ιΙΙιΙ..ιΙΙΙ.ιΙΙιιιΙΙ.ιιΙΙΙ.ΙιΙιιΙΙΙιΙιΙΙιΙ

Account Ending In:  91000

Dear James F Lowy:

Thank you for making us aware of the unauthorized charge(s) on your American Express account. We are
sorry that you had to experience this situation.

As a result of our investigation, we have found the charge(s) totaling $930.84, not to be fraudulent. Your
claim has been forwarded to our Customer Service Department and they will be contacting you at a later
date.

We are crediting your account for $7,692.43.  This credit will appear on an upcoming statement.

It is the policy of American Express to aggressively pursue the arrest and prosecution of any individual(s) that
have made unauthorized charges.  Company Security requires all information relating to an investigation be
kept confidential.

It is essential to our continuing investigation that you complete and sign the enclosed Affidavit of Fraud and
return it to this office by 01/26/2008.  A pre-paid, pre-addressed envelope is enclosed for your
convenience.  After we receive the affidavit, if we need additional information we will contact you.  If you do
not hear from us regarding this matter by 02/24/2008, you may consider this case closed.

The above referenced adjustment credits all fraudulent charges billed to your account.  Any merchant
credits that were received towards the fraudulent charges will be debited accordingly in order to avoid
duplicate credits.  The debits will appear on an upcoming statement.

Any finance charges and/or miscellaneous fees that may have been billed to your account as a result of the
fraudulent charges will be credited accordingly.  To avoid interruption in any automatic billing service(s), you
should advise the service establishment(s) of your new account number.  We regret any inconvenience you
may have experienced.  It is a pleasure to be of service to you 24 hours a day, every day of the year.  If we
can be of further assistance, please contact us at the toll free number on your statement.



The issuer of this card is American Express Bank, FSB.

3M05          PHX          101E          FROP          PU8883A          UC39780          TRMUNFR10001002          N          N

Sincerely,

P. Hopkins

P. Hopkins
Fraud Services
Dispute Reference Number:   UC39780



American Express
Fraud Operations
P.O. Box 981541
El Paso, TX 79998

January 07, 2008

James F Lowy
PO Box 10614
Tampa, FL 33679-0614

Account Ending In: 91000

## AFFIDAVIT OF FRAUD

I, _____, hereby declare that American Express
(Your Name)
Card and/or number _____

was fraudulently used, that I have examined the following transactions and further state that the
transactions were not incurred by me nor any person with my authority, either expressed, implied, or
apparent, and that I have not received and will not receive, directly or indirectly any benefit there from.

| DATE | U.S. AMOUNT | INTL. AMOUNT | ESTABLISHMENT NAME |
|------|-------------|--------------|---------------------|
|      |             |              |                     |
|      |             |              |                     |
|      |             |              |                     |
|      |             |              |                     |
|      |             |              |                     |
|      |             |              |                     |

I also certify that the following is true and correct:

1. Please describe the circumstances surrounding your claim. _____
_____

2. Are you in possession of the above listed American Express Card?
Yes ___ No ___   If not in possession, was the Card:
Lost ___ Stolen ___ Never Received ___ Other _____ (Specify)
If Stolen: Police Report Filed?: Yes ___ No ___
City _____ Precinct _____ Case # _____

3. Did you, or have you ever allowed the American Express Card to be used by
someone other than yourself?  Yes_____ No_____

4. Do you have knowledge as to who made the fraudulent charge(s) listed above?
Yes ___ No ___

5. If answered yes to question 4 above, for what reason do you
suspect that this individual made the fraudulent charge(s) to
your account? _____
_____

(Please See Other Side)

Dispute Reference Number:  UC39780

**EXHIBIT 6**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

FAGAN, et al,                  :
                  **PLAINTIFFS**    :        **CIVIL ACTION**
                               :        **07-CV-10293 (SAS)**
     - vs -                    :
                               :
LOWY, et al                    :
                               :
                  **DEFENDANTS.**    :
---------------------------------------------------X

## MOTION (i) TO SEAL, (ii) FOR EXTENSION OF TIME TO FILE MOTIONS FOR REMAND AND FOR RECUSAL, (iii) FOR EXPEDITED PRE-MOTION CONFERENCE RELATED TO MOTIONS and (iv) FOR OTHER RELIEF

**PLEASE TAKE NOTICE** that the below referenced Plaintiff will move this

Honorable Court, on a date as set by the Court, as soon as counsel can be heard, at the

United States District Court for the Southern District of New York, located at 500 Pearl

Street, New York, NY 10007, Courtroom 15 C, before the Honorable Shira A.

Scheindlin, for, among other things, and Order

(i)     To seal certain papers in this case;

(ii)    For Extension of Time to File Motions for Remand and for Recusal;

(iii)   For Expedited Pre-Motion Conference Related to Motions; and

(iv)    For such other relief as is just and equitable.

1

**PLEASE TAKE FURTHER NOTICE** that Plaintiff make this Motion under the following specific provisions of the Federal Rules of Civil Procedure, Local Rules of the Southern /Eastern Districts of New York

**PLEASE TAKE FURTHER NOTICE** that in support of this Motion, Plaintiff will rely upon Declaration and Statement of Authorities of Edward D. Fagan, together with supporting Exhibits.

**PLEASE TAKE FURTHER NOTICE** that opposition, if any, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District and/or at such other date as may be set by the Court.

Dated: December 13, 2007
New York, NY

/s/ Edward D. Fagan (electronically signed)
Edward D. Fagan, Esq.
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel. (646) 378-2225
Fax (646) 304-6446
Plaintiff

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused the foregoing

## MOTION (I) TO SEAL, (ii) FOR EXTENSION OF TIME TO FILE MOTIONS FOR REMAND AND FOR RECUSAL, (iii) FOR EXPEDITED PRE-MOTION CONFERENCE RELATED TO MOTIONS and (iv) FOR OTHER RELIEF

to be electronically filed with the Clerk of the Court and served upon counsel of record.

A courtesy copy of the papers with the moving papers have been forwarded to the Honorable Shira A. Scheindlin, USDJ.

An additional copy is electronically, faxed and/or served and to Defendants' counsel of record.

Dated:  December 13, 2007
         New York, NY

/s/ Edward D. Fagan (electronically signed)
Edward D. Fagan, Esq.

3

**EXHIBIT 7**

## EDWARD D. FAGAN ESQ.

Five Penn Plaza, 23rd Floor, New York, NY 10001
Tel. (646) 378-2225, Fax # (646) 417-5558 & Email: faganlawintl@aim.com

# *FAX  TRANSMISSION*

**TO:**    **James F. Lowy**  - Via Fax # (813) 282-0384
          **Michael R. Perle Esq – c/o James F. Lowy - Via Fax # (813) 282-0384**

**FROM:**  **Ed Fagan**

**RE:**    **Fagan et al v. Lowy et al 07-114562 (pending before Justice Solomon)**

**DATE:**   **November 6, 2007**                      **TOTAL # PAGES:  1**

I write to put you both on notice of what I consider to be further violations of the Oct. 31, 2007 Temporary Restraints imposed by Justice Solomon.

As you both knew before we all appeared at today's Conference, the issue before Judge Daniels had nothing to do with the issues before Justice Solomon.  The only issue to be addressed by Judge Daniels was who would represent which Plaintiffs going forward.   At the beginning of the Conference, Judge Daniels explained that to you and he explained the issues he wished to address at the Conference.  Judge Daniels expressly stated that he was not interested in dealing with fights between lawyers, i.e. the matters you both sought to raise.

Yet, for whatever reasons, you both sought to use today's hearing (i) to improperly raise issues that were not before Judge Daniels and (ii) to make disparaging statements about me in front of the District Court, adversaries and on the record.  Judge Daniels attempted to stop you – Mr. Perle.  Judge Daniels told you that he would not interfere with issues pending before Justice Solomon.  However, nothing Judge Daniels said would deter you.  What you did was make a record in which you openly disparaged me, sought to undermine or denigrate my authority with clients and sought to interfere with my representation of clients.

I submit that Mr. Perle's statements (on your behalf Mr. Lowy) are precisely the type of conduct the TRO was meant to enjoin.  And, today's antics are just the latest in a series of violations since the TRO was entered and served.

I demand that you both cease and desist from further violations.  I beg you to stop engaging in these types of acts, stop injuring innocent clients, stop attempting to interfere with my representation of clients and stop trying to cause damages to my business and me.

Ed Fagan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CONFIDENTIALITY WARNING & NOTICE

The information in this facsimile message and attachments is legally privileged and confidential information intended only for the us of the individual or entity named above. If the reader or recipient is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify the send immediately by calling us at (646) 378-2225 and thereafter please DESTROY the facsimile message.

From: "Edward D. Fagan" <Ed.Fagan@global-litigation-partners.com>
Subject: Michael Perle
Date: November 6, 2007 7:23:48 PM EST
To: James Lowy <jameslowy@gmail.com>, James Lowy <jameslowy@floridalawgroup.com>, m.perle@earthlink.net

Jim and Michael:

Please be advised that I have no objection to Michael Perle's coming in to serve as local counsel for certain plaintiffs in the Alkow case.  Please send his contact information so I can communicate with him as well.

I do however object to Michael Perle's representing any defendant in the case of Fagan v. Lowy et al before Judge Solomon.  If it is the intention of either of you to try to have Michael Perle enter his appearance in that case, please advise me immediately by return email so I can take the necessary steps to file my objections.  There should be no delays in the current schedule in that case.

Finally, as per Judge Daniels' directions, Jim, please also advise if you now want to reconsider your prior refusal and are now willing to submit the disputes between us for binding, expedited arbitration in NY as I previously offered.

I await your response.

Thank you.

Ed

Edward D. Fagan Esq.

5 Penn Plaza, 23rd Floor, New York, NY 10001

Tel. (646) 378-2225 & Fax (646) 417-5558

Email: ed.fagan@global-litigation-partners.com
